HERTZ COMMERCIAL LEASING
CORPORATION, Appellant,

v.

Marcus JOSEPH, d/b/a Marcus
Joseph Cars, Appellee.

Court of Appeals of Kentucky.

Nov. 5, 1982.

Ray A. Webb, Gess, Mattingly, Saunier & Atchison, Lexington, for appellant.

John C. Fogle, Bryan & Fogle, Mount Sterling, for appellee.

Before LESTER, WHITE and WINTERSHEIMER, JJ.

LESTER, Judge.

This is an appeal from a judgment, supported by findings of fact and a conclusion of law, dismissing the complaint of plaintiff-appellant based upon the pleadings only.

This litigation presents a procedural quagmire which we will narrate in chronological order. On June 29, 1977, appellant brought an action against appellee to recover a balance due of $19,150.95 under a leasing agreement for the rental of a muffler pipe bending machine and repossession of the equipment. It was agreed between the parties, by proper entry in the record, that Hertz could get the machine and answer was filed August 26, 1977.

The next item appearing in the record before us is a court calendar sheet dated March 16, 1979, bearing, among other things, the style of the case, the clerk's case number (4601) and the notation "dismissed" as well as the signature of the judge at the bottom. Nothing in the record indicates, at this point, why the step was taken, but in the briefs we are informed that it was done pursuant to CR 77.02(2) as a "housekeeping" measure. We see no evidence that the notice of proposed dismissal, as is required by the rule, was sent to each attorney of record. In addition, we find no order supplementing the calendar form. The next entry is appellant's motion in case numbered 4601 for the assignment of a trial date which the clerk stamped filed on March 11, 1980. No order was entered on the motion.

A new complaint between the same parties requesting recovery under the same lease was filed by different counsel for appellant on August 26, 1980, and designated as case number 80–CI–198. Insofar as they are germane to this appeal the defenses raised in the two suits were a plea of res judicata by virtue of the order of dismissal (No. 80–CI–198), if any such valid order there be, and the statutory defense embodied in KRS 446.060 (No. 4601) requiring signatures to be subscribed at the end or close of any writing.

Some seven and a half months later, on April 23, 1981, appellant moved for a trial date and six days thereafter, appellee responded thereto again, reminding the court of the plea of res judicata in that the order of dismissal operated as an adjudication upon the merits. In that response, Hertz pointed out that the dismissal was the result of the court reviewing its docket as authorized by CR 77.02(2) and giving "notice to the attorneys for the plaintiff to show cause on March 16, 1979, why the action should not be dismissed for want of prosecution." If any notices were sent to anybody, absolutely nothing in this record would so indicate. Be that as it may, appellant argued to the trial court that based upon a comment in the 1980 supplement in *Clay's Kentucky Practice* that CR 77.02(2) dismissal was one with prejudice pursuant to CR 41.02. Plaintiff below replied that the doctrine of res judicata did not preclude the second action basically because since no notice was sent out to counsel under CR 77.02(2) then the thirty day period to show cause why the suit should not be dismissed had not yet begun to run.

Under date of May 15, 1981, we find another calendar entry with a notation next to the style and number of the case to the effect "dismissal withdrawn pretrial June 5 trial July 14." We assume that the "dismissal withdrawn" refers to the dismissal in No. 4601, but again, nothing in the record so demonstrates.

The court ordered a pre-trial conference and both parties submitted written memoranda. Hertz argued that the lease agreement should be interpreted and governed by the Uniform Commercial Code, while Joseph reiterated his KRS 446.060(1) defense and in addition, took the position that his voluntary relinquishment of the equipment and Hertz's resumption of possession operated as a surrender, and that all rent accruing subsequent to that surrender is extinguished. The court, in dismissing the plaintiff's complaint, found that Joseph's signature appeared at the bottom of the

first page of the lease while the penalty provisions and right to terminate were on the back of the page following the signature and therefore, these latter clauses were deemed to be unsigned and unenforceable. No statutory or case law is cited by the court.

Our examination of the lease leads us to a different view of the document from that of the circuit court. The document is printed on what is commonly referred to as "letter size" paper being eleven inches in length. Eight inches from the top of page one appears a printed proviso which states in part:

If Hertz accepts, Lessee agrees to hire from Hertz, and Hertz agrees to lease to Lessee, the equipment, on all the terms hereof, including the **Terms and Conditions** set forth below.

Those words emphasized in the above quotation were printed in larger letters and darker ink than the balance thereof. Thereunder, at inch number nine, Joseph's signature appears and three quarters of an inch below that the additional terms and conditions commence on the first page and cover the entire rear thereof. So when the trial court found that the penalty and termination clauses "were on the back of this page following his signature," it was not entirely correct.

■ Our approach to this cause differs from the usual appeal in that we must first answer an issue raised by the appellee before treating those propounded by Hertz. It will be recalled that Joseph raised the defense of res judicata in the trial court as a plea in bar to the second action based upon the dismissal of the first litigation. Both parties argue their positions upon the assumption that the dismissal was entered pursuant to CR 77.02(2) and we can only assume this to be true because of the expiration of some nineteen months between steps being taken and the absence of any motion to dismiss or stipulation under CR 41.01. CR 77.02(2) provides:

At least once a year trial courts shall review all pending actions on their dockets. Notice shall be given to each attorney of record of every case in which no pretrial step has been taken within the last year, that the case will be dismissed in thirty days for want of prosecution except for good cause shown. The court shall enter an order dismissing each case in which no answer or an insufficient answer to the notice is made.

The foregoing has been referred to as a "housekeeping" rule which has as its purpose expediting the removal from the docket of stale cases. 7 W. Clay, *Kentucky Practice,* CR 77.02, Comment (3rd ed.—1981 P.P.). It provides a procedure in that notices "shall" be given to each attorney of record and requires that counsel be given thirty days in which to respond to the proposed dismissal. Moreover, if the litigation is to be dismissed, then an *order* shall be entered to that effect. We deem these requisites to be mandatory because the dismissal of any litigant's case is not to be treated lightly whether under a "housekeeping" rule or whether done pursuant to CR 41.01. In this record we find no notice of a suggested dismissal nor do we find any order, for we do not deem a notation upon a court calendar form as compliance with the necessity that "an order" be entered. Appellee urges that we adhere to an author's comment found in 7 W. Clay, *Kentucky Practice,* CR 41.02, Comment 3 (3rd ed— 1981 p.p.), which in discussing CR 77.02 states

Such a dismissal would be with prejudice unless otherwise specified.

This view is not supported by any authority and we do not feel bound thereby. As indicated above, we deem a dismissal of litigation to be of a serious nature and accordingly are unwilling to subscribe to the proposition that the effect of an order entered pursuant to a "housekeeping" rule is one that is to be automatically considered "with prejudice" to a party's lawsuit. In addition, as previously pointed out, what we consider to be mandatory steps were not taken, thus vitiating the dismissal.

■ Appellee misconceives the meaning of the doctrine of res judicata for that principle is applicable only in a situation

where there has been a judgment on the merits and it can hardly be said that a complaint followed by an answer and an alleged order of dismissal under the "housekeeping" rule is an adjudication upon the merits. We direct attention to 46 Am. Jur.2d *Judgments* §§ 394, 477, 493 (1969). Res judicata has no applicability in this appeal.

■ By way of reply brief, appellant urges that absent a cross-appeal appellee was precluded from arguing res judicata and/or previous dismissal upon this appeal. We deem it unnecessary to discuss at length the strained reasoning by which Hertz advances its position except to point out that the Supreme Court has opined that an appellee need not file a cross-appeal when it seeks affirmance only for the reasons assigned by a trial court or "for any other reasons appropriately brought to its attention." *Carrico v. City of Owensboro*, Ky., 511 S.W.2d 677 (1974). Joseph's brief requests affirmance only and it had urged a plea of res judicata at the trial level. The fact that the court made no reference to the doctrine does not have the effect of requiring a cross-appeal nor does the withdrawal of a meaningless "order" have any effect.

■ We now turn to the crux of this cause. Even though the circuit court assigned no authority for its conclusions it is assumed and argued that it was guided by our opinion in *R.C. Durr Company, Inc. v. Bennett Industries, Inc.*, Ky.App., 590 S.W.2d 338 (1979), wherein the language incorporating by reference other "terms and conditions" of the contract appeared below the signatures while in the case at bar, similar words appear *above* the signatures. This fact alone removes the litigation from the interpretation of *Durr* and places it squarely within the purview of *Childers & Venters, Inc. v. Sowards*, Ky., 460 S.W.2d 343 (1970), wherein the court refused to construe KRS 446.060(1) as abolishing the doctrine of incorporation by reference and concluded that where the signatures appear below the incorporating language, which must be conspicuous by being in larger or other contrasting type or color,

then those additional provisions, be they on the same page or the rear thereof, are binding upon the parties. This is the law applicable to this appeal.

In passing, we should note that as early as 1957 our Legislative Research Commission in its Research Publication No. 49, entitled Uniform Commercial Code: Analysis *Of Effects On Existing Kentucky Law*, Sec. 1–201(39) at 14 (1957), in discussing the mutual relationship between KRS 446.060(1) and U.C.C. section 1–209(39), pointed out that "[t]he broadening of the terms 'signed' and 'signature' may alter present law." For an interesting comment on our *Durr* decision, we direct attention to Roeder, *Commercial Law*, 69 K.L.J. 517 at 523 (1980–81).

The most important issue of this case is directed to a new approach in Kentucky jurisprudence as it might affect a large segment of business transactions, namely, the lease agreement and whether that type of contract should be governed by the Uniform Commercial Code. Appellant urges that it should be while appellee entertains the opposite view. This litigation reflects the extent to which the equipment rental commerce has become a part of the day to day life of industry, for in the past it was thought of in terms of large expensive machinery which the average business concern was unable to buy. However, when we see such items as a muffler pipe bender and the thousands of individual automobiles being leased throughout the Commonwealth, we believe some uniformity must be extended to the rights and remedies of the parties entering into these types of agreements. Perhaps one of the best expressions of the appropriate philosophy in this regard was authored by Judge Martin Evans in *Hertz Commercial Leasing Corp. v. Transportation Credit Clearing House*, 59 Misc.2d 226, 298 N.Y.S.2d 392, 6 U.C.C.Rep. 132 (1969), to the effect:

> Equipment leasing is a recent device whereby users of goods are enabled to have sole and exclusive use thereof for such periods of time as are economically beneficial to them at advantageous costs.

It has become a widely used substitute for purchase, with the lessor, in economic reality, taking the place of a financing agency and the lessee paying the equivalent of the full purchase price, plus interest, within the minimum lease period. The lessor [lessee], in effect, is the true purchaser. Under present tax laws, which appear to be the basis on which these arrangements are made, it is foreseeable that this method of transferring the right to use goods will encompass a sizable portion of the volume of commercial transactions which have the use of goods (rather than their consumption) as their immediate economic end.

In view of the great volume of commercial transactions which are entered into by the device of a lease, rather than a sale, it would be anomalous if this large body of commercial transactions were subject to different rules of law than other commercial transactions which tend to the identical economic result.

\*     \*     \*     \*     \*     \*

The very wording of § 2–102 of the Code, defining the scope of the Article, states:

"Unless the context otherwise requires, this Article applies to transactions in goods, . . ." Clearly, a "transaction" encompasses a far wider area of activity than a "sale," and it cannot be assumed that the word was carelessly chosen. The 1955 Report of the Law Revision Commission, at page 363 reveals that the "property" or "title" concept is of negligible importance under Article 2; and indeed a reading of the Article leads to the conclusion that this was the intent. The Code considers the duties, rights and remedies arising from a transaction as of primary importance, and relegates the concept of "title" to a far lesser status that it had under earlier common law and under the Uniform Sales Act. The use in some sections of the words "contract for sale" and in others, of the word "contracts" can also be taken to mean that the scope of the Article was not limited to a transaction involving solely a "sale" with "title" and "property" as its symbols and marks.

That the provisions of the Uniform Commercial Code may be extended by analogy to cases within the intent of the Code has been foreseen by the Bar (see 5 Am Bus LJ 287 [Winter, 1967]; UCLA Law Rev 13:125 [November, 1965]; The Business Lawyer [ABA] 28.812 [April, 1968].

The New York Courts do not stand alone in their position for they are joined by Arkansas, *Sawyer v. Pioneer Leasing Corp.,* 244 Ark. 943, 428 S.W.2d 46, 5 U.C.C.Rep. 453 (1968); Illinois, *Walter E. Heller & Co., Inc. v. Convalescent Home,* 49 Ill.App.3d 213, 8 Ill.Dec. 823, 365 N.E.2d 1285, 22 U.C.C.Rep. 574 (1977); Massachusetts, *Bechtel v. Paul Clark, Inc.,* 10 Mass.App. 685, 412 N.E.2d 143, 30 U.C.C.Rep. 487 (1980); Kansas, *Atlas Industries, Inc. v. National Cash Register Co.,* 216 Kan. 213, 531 P.2d 41, 16 U.C.C. Rep. 302 (1975) and in some respects the federal system, *Vitex Manufacturing Corp. v. Caribtex Corp.,* 377 F.2d 795, 4 U.C.C. Rep. 182 (3rd Cir.1967).

■ Our Legislature has sought to simplify, clarify and modernize the law of commercial transactions as well as permit the continued expansion of commercial practices and make uniform the law applicable thereto among the various jurisdictions. KRS 355.1–102. In order to bring that uniformity to the law governing lease agreements, we now hold that the Uniform Commercial Code is applicable to such transactions.

The judgment is reversed and the cause remanded to the circuit court for further proceedings consistent with the views expressed herein.

All concur.