**FORD MOTOR CREDIT COMPANY, Appellant,**

v.

**WEBB–ELKHORN COAL CORPORATION,**
Appellee.

**No. 88–CA–1223–MR.**

Court of Appeals of Kentucky.

Sept. 1, 1989.

Elizabeth Lee Thompson, Mapother and Mapother, Lexington, for appellant.

Shelby C. Kinkead, Jr., Susan S. Durrant, Bulleit, Kinkead, Irvin & Reinhardt, Lexington, for appellee.

Before HAYES, LESTER and WILHOIT, JJ.

WILHOIT, Judge.

The only question raised on this appeal is whether the Fayette Circuit Court erred in

holding that the provisions of KRS 355.9–504(3) applied to the repossession and sale of a 1984 Ford pickup truck leased to the appellee by the appellant's assignor.

In 1983 the truck was leased to the appellee by Paul Miller Ford, Inc. Paul Miller later assigned its rights under the lease to the appellant. The written lease provided for a term of 48 months with an initial payment by the appellee of $815.29, which included a refundable security deposit of $400.00, the first monthly rental payment of $394.65, and registration fee of $20.64. Thereafter, 47 payments of $394.65 were to be made each month. The appellee was given the option to purchase the truck at the expiration of the term for $6,000.00, provided it was not then in default. The appellee was to pay all ad valorem taxes assessed against the truck during the term and maintain comprehensive casualty and liability insurance on the vehicle. The appellee was also liable to pay all sales or use taxes incurred by reason of the lease as well as "to see that all needed repairs are made." In the event that the appellee failed to pay any rental installment when due, or otherwise defaulted in its agreements under the lease, the appellant had the option of terminating the lease, repossessing the truck, and selling it "at public or private sale with or without notice to the Lessee." Upon such a termination, the appellee was to make immediate payment of all unpaid monthly installments, and the sums received from the sale would be subtracted from the amount owed to the extent that they were "in excess of what the Lessor would have had invested in the Vehicle at the end of the lease term."

On January 28, 1985, the appellant repossessed the truck in accordance with the default provisions of the lease and later sold it at a private auction for $10,700.00. By its computations, there was still a deficiency of $4,807.91 owed to the appellant by the appellee over and above the sale proceeds in accordance with the lease provisions. This action was begun to recover that deficiency.

There does not appear to be a dispute as to the commercial reasonableness of the sale of the truck itself; rather, the appellee maintained that the deficiency could not be recovered because the notice of sale required by KRS 355.9–504(3) had not been given. The appellant insisted that this statute had no relevance to the present situation because the lease agreement between the parties was not a secured transaction falling under the purview of Chapter 9 of the Uniform Commercial Code (KRS 355.9), because it was a true lease rather than a sale with a retained security interest disguised as a lease. The trial court, interpreting this Court's opinion in *Hertz Commercial Leasing Corp. v. Joseph*, Ky.App., 641 S.W.2d 753 (1982), concluded that the holding in that case was that the Uniform Commercial Code applies to all leases of personal property.

Whether the provisions of KRS 355.9–504(3) apply to this case does not turn upon the decision in the *Joseph* case, but upon the legislative intent expressed in the plain wording of the Uniform Commercial Code itself. Whatever this Court's notion of good public policy may or may not be, we have no authority to alter the public policy clearly expressed by the General Assembly.

KRS 355.1–201(37), defining "security interest," provides that the reservation of title by the lessor in a lease agreement is not a security interest unless it is intended as security; whether a lease is intended as security "is to be determined by the facts of each case." This subsection goes on to state that the inclusion of an option to purchase does not of itself make the lease one intended for security, and an agreement that upon compliance with the terms of the lease, the lessee shall become or has the option to become the owner for no further consideration or only nominal consideration does not make the lease one intended for security. KRS 355.9–102(2) specifically applies Article 9 to a lease "intended as security." Thus, by the provisions of the Code itself, KRS 355.9–504(3) applies only if the lease between the appellant and the appellee was intended as security and this intent is to be determined by the facts of the case. In short, the question is

whether this is a true lease, or merely an installment sale with a security interest retained under the guise of a lease.

■ Courts dealing with this question have considered many factors in reaching their determination. *See, e.g., In re Alpha Creamery Co.,* 4 U.C.C.Rep.Serv. (Callaghan) 794 (Bankr.W.D.Mich.1967), and *WOCO v. Benjamin Franklin Corp.,* 20 U.C.C.Rep.Serv. (Callaghan) 1015 (D.N.H. 1976); *Diaz v. Goodwin Brothers Leasing, Inc.,* Ky., 511 S.W.2d 680 (1974). Because of the way in which this case developed, it does not appear that the parties have fully developed and presented the factors bearing on the true nature of the lease, and the trial court has not had an opportunity to consider the case as thus fully developed. For this reason, it would be inappropriate for us to decide this question in the present appeal.

The judgment of the trial court is reversed and this case is remanded for further proceedings.

All concur.