**DITCH WITCH TRENCHING COMPANY OF KENTUCKY, INC., Appellant,**

v.

**C & S CARPENTRY SERVICES, INC., Appellee.**

No. 90–CA–1147–S.

Court of Appeals of Kentucky.

April 26, 1991.

Keith D. Duerr, Huddleston & Van Zant, P.S.C., Elizabethtown, for appellant.

Stephen G. Wheatley, Pearl, Musselwhite, Wheatley, Smith & Gohman, Radcliff, for appellee.

Before GUDGEL, HOWARD and McDONALD, JJ.

McDONALD, Judge.

In this case we are presented with an issue of first impression in this jurisdiction concerning the applicability, if any, of KRS 355.1–207 to a "full payment" check situation.

The facts are uncomplicated and not in dispute. The appellant/creditor, Ditch Witch Trenching Company of Kentucky, Inc., is in the business of renting equipment. It leased a tractor and plow attachment to the appellee/debtor, C & S Carpentry Services, Inc., who was performing construction work in Richmond, Kentucky. Ditch Witch sent the appellee a bill for $7,560 at the conclusion of the rental period. Although there is no dispute concerning the daily rental rates for the equipment, disagreement did arise between the parties concerning the actual dates of the lease period. C & S acknowledged leasing the equipment from May 3, 1989, through May 16, 1989, while Ditch Witch believed the correct dates to be April 10 through May 17. C & S issued a check to Ditch Witch on July 16, 1989, in the sum of $2,835, a sum it acknowledged owing. In

the memo portion of the check C & S included the words, "CASHING CONSTITUTES PAYMENT IN FULL." Victor Brinkman, president of Ditch Witch, crossed out the "payment in full" language, cashed the check and sent C & S a letter notifying it that its check had been accepted as partial payment *only* of the total rental bill owed.

C & S never paid the balance due and Ditch Witch commenced this action to collect the $4,725 it believed it was owed. C & S moved for summary dismissal based on the common law doctrine of accord and satisfaction. Ditch Witch responded that there was no accord and in any event, the common law had been superseded by the passage of the Uniform Commercial Code. Specifically, Ditch Witch relied on KRS 355.1–207. The trial court rejected the appellant's arguments, granted the motion for summary judgment, and dismissed the complaint.

The issue before us is whether the common law doctrine of accord and satisfaction has been abrogated by KRS 355.1–207 in the conditional check situation. Arguably, if the code does not apply, the claim of Ditch Witch would be barred by the doctrine of accord and satisfaction. *See Speckman v. Goldberg*, Ky., 343 S.W.2d 577 (1961). Though the issue has not been considered in this jurisdiction, it is not obscure and has been the source of debate in several other jurisdictions.[1] *See* Annot., 37 A.L.R.4th 358 (1985). A clear majority of states that have addressed the issue have refused to apply the code to the conditional check situation. *See* W. Grosse and E. Goggin, "The 1–207 Dilemma Revisited," 16 N.Ky.L.Rev. 425, 429–431 (1989). Professors Grosse and Goggin, recognizing that "total uniformity is no longer possible," encourage those jurisdictions which have not yet considered the issue to follow the majority rule. It is more important to us, however, to reach a correct result than mechanically adopt the majority position.

KRS 355.1–207, entitled, "Performance or acceptance under reservation of rights," provides:

A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as "without prejudice," "under protest" or the like are sufficient.

The only case cited in this regard by the appellee, *Brown v. Coastal Truckways, Inc.*, 44 N.C.App. 454, 261 S.E.2d 266, 28 UCCRS 3, 6 (1980), did not apply this section to a "payment in full" dispute between the parties primarily in reliance upon the Official Comment which states that the section is applicable in those situations where "one party desires to continue performance under a contract without waiving any right in a pending dispute," not where one desires to "preserve his right to collect his claim in full." Many cases we have examined, *e.g., Chancellor, Inc. v. Hamilton Appliance Co.*, 175 N.J.Super. 345, 418 A.2d 1326 (App.Div.1980), also rely on the comments to preclude payments. However, we believe this argument is untenable because "performance" contemplates and encompasses such concepts as delivery, acceptance, as well as payment. In this regard we agree with the rationale expressed in White and Summers, *Uniform Commercial Code* § 13–24 (3d ed.) (1988), that "the language of 1–207 fits the partial payment perfectly. The comments fit it less well."

A leading case which compiles the legal literature and case law on this issue is *Horn Waterproofing Corp. v. Bushwick Iron & Steel Co., Inc.*, 66 N.Y.2d 321, 497 N.Y.S.2d 310, 488 N.E.2d 56, 58 (1985). *Horn* holds that applying § 1–207 to the "full payment" situation "more nearly comports with the content and context of the statutory provision and with the legislative history and underlying purposes of the code as well, and is a fairer policy in debtor-creditor transactions." The court in

1. Not only has this issue not been considered here previously, we can find no case in this jurisdiction that refers to or cites this particular code provision in any context. As it has been effective since July 1, 1960, this causes us to wonder what purpose this section serves under the scheme established by the drafters of the code, if not that suggested by the appellant.

*Horn* relied in part on § 1–102 of the code identical to that found in our act at KRS 355.1–102, which provides:

(1) *This Chapter shall be liberally construed and applied to promote its underlying purposes and policies.*

(2) Underlying purposes and policies of this Chapter are

(a) to simplify, clarify and modernize the law governing commercial transactions;

(b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties;

(c) to make uniform the law among the various jurisdictions. (Emphasis added.)

■ In construing this section, our courts have held that the code "represents an entirely new approach in several areas of commercial law ..." and "... is *plenary and exclusive* except where the legislature has clearly indicated otherwise." *Lincoln Bank & Trust Company v. Queenan*, Ky., 344 S.W.2d 383 (1961). *See also Corbin Deposit Bank v. King*, Ky., 384 S.W.2d 302 (1964). We believe that a literal interpretation of the plain language contained in 1–207, not to mention a liberal construction, compels the conclusion that the common law doctrine of accord and satisfaction has been superseded by the passage of this statute.

■ Another argument advanced by those opposed to application of the code is that 1–207 "does not fit easily within the principles of article 3 that govern checks," but instead has a "close and harmonious connection with article 2." *County Fire Door Corp. v. C.F. Wooding Co.*, 202 Conn. 277, 520 A.2d 1028 (1987). It is beyond cavil that payment of any obligation by check or other negotiable instrument is a code-covered transaction. (Article 3, Commercial paper). It is our opinion that § 1–207, found in the introductory article of the code, was intended to apply to

transactions falling within any article of the code, including article 3. *See* D. Leibson and R. Nowka, *The Uniform Commercial Code of Kentucky*, § 1.1 (1983). Again the reasoning in the *Horn* case is convincing:

There is simply no language in section 1–207 expressing or intimating a more restrictive intention to limit its application to specific kinds of transactions particular to one of the articles, or sections, of the Code such as the purchase and acceptance of goods (art. 2), investment securities (art. 8) or chattel paper (art. 9). Rather, the nonlimiting language of section 1–207 and its placement in the Code with the other generally applicable provision of article 1 is persuasive that the section is, indeed, applicable to all commercial transactions fairly considered to be "Code-covered." 497 N.Y.S.2d at 315, 488 N.E.2d at 61.

■ It is our interpretation of KRS 355.1–207 that a creditor who receives a "payment in full" check on a disputed claim may accept the check, as Ditch Witch, without losing his rights to sue for the balance of the payment, so long as he explicitly reserves those rights. Brinkman's crossing out the conditional language and notifying C & S of its actions amounted to explicit acts of reservation in our opinion.[2] C & S is thus not entitled to judgment as a matter of law, and Ditch Witch is entitled to a trial on the merits of its complaint.

We do not believe that this holding will prevent or discourage parties from working out their disputes informally. Further, we do not believe we have committed any violence to the common law of this jurisdiction. It is our belief that application of the code to this situation is fairer to all parties involved and is the resolution most consistent with the code's expressed purposes. *See also Majestic Building Material Corporation v. Gateway Plumbing, Inc.*, 694 S.W.2d 762 (Mo.App.1985).

**2.** We are aware that there is authority that mere crossing out of conditional language does not constitute a reservation of rights contemplated by the code. *See e.g. Sullivan v. Conant Valley Associates, Ltd.*, 148 Misc.2d 483, 560 N.Y.S.2d 617 (Sup.1990). However, we believe such acts, particularly when coupled with a writing to the creditor, are sufficiently "explicit" without additional verbiage to satisfy the code requirements.

Accordingly, the judgment of the Hardin Circuit Court is reversed and remanded for further proceedings consistent with this opinion.

HOWARD, J., concurs.

GUDGEL, J., dissents.

GUDGEL, Judge, dissenting:

Respectfully, I dissent. In the first place, this is not a case to which the Uniform Commercial Code applies. This matter involves a dispute over the amount due as payment under the terms of a lease between the parties. The record shows without question that the parties entered into a short-term lease for the rental of certain equipment. In contrast to situations involving either sales or installment sales contracts disguised as leases, a true short-term lease such as this is clearly not governed by Article 2 or Article 9 of the Uniform Commercial Code. *See Ford Motor Credit Co. v. Webb–Elkhorn Coal Corp.*, Ky.App., 775 S.W.2d 945 (1989); *Hertz Commercial Leasing Corp. v. Joseph*, Ky.App., 641 S.W.2d 753 (1982).

Moreover, contrary to the view set out in the majority opinion, I am not persuaded that this case falls within the scope of Article 3 of the code merely because a check was utilized to tender payment for the underlying debt. In reaching its conclusion the majority relies upon *Horn Waterproofing Corp. v. Bushwick Iron & Steel Co., Inc.*, 66 N.Y.2d 321, 497 N.Y.S.2d 310, 488 N.E.2d 56 (1985). However, I am of the opinion that a better-reasoned view is that set out in *Jahn v. Burns*, 593 P.2d 828 (Wyo.1979). There, the Wyoming Supreme Court held that the fact "that a negotiable instrument was used in a transaction does not make the entire transaction a commercial one." *Id.* at 831. Further, the court concluded that the provisions of Article 3 pertain only to the "interpretation, transferability, negotiability, rights of holders, and other aspects of the instrument itself. If the other portions of the transaction are not 'commercial,' the use of commercial paper does not cause them to fall within the provisions of the Code." *Id.* at 831. *See also Sistine v. Tollard*, 95

Wis.2d 678, 291 N.W.2d 636 (1980); R. Anderson, *Uniform Commercial Code* § 3–101:8 (1971); Annot., 37 A.L.R.4th 358 (1985).

Here, there is no dispute as to either the negotiability or the validity of the check used to tender payment for the underlying debt. To hold, as the majority has done, that the entire transaction nevertheless falls within the scope of Article 3 merely because a check rather than cash was utilized to tender payment for the debt creates, in my opinion, a legal distinction which is inequitable, illogical, and ill-advised.

Further, even if it is assumed that this case falls within the scope of the code, I believe that we should follow the rule to which the majority of jurisdictions in this country adhere. Those courts have refused to hold that the common-law doctrine of accord and satisfaction has been abrogated by § 1–207 of the code in conditional check situations such as the one before us in this appeal. *See, e.g.,* Grosse and Goggin, *The 1–207 Dilemma Revisited,* 16 N.Ky.L.Rev. 425 (1989), and cases cited therein.

My conclusion in this vein is based upon several considerations, including those which are aptly summarized in Professors Grosse and Goggin's article, *supra*. First, as KRS 355.1–207 specifically refers to the performance and continuation of contracts, but not to the subject of payment, the statute on its face does not apply to the issue before us involving the common law doctrine of accord and satisfaction in a conditional check situation. Further, applying § 1–207 to transactions such as the one at hand has the effect of improperly permitting one party to unilaterally determine the other party's rights. More importantly, a review of the official comment to § 1–207 clearly reveals that the drafters of the code had no intention of altering the common law doctrine of accord and satisfaction. Indeed, the conclusion that the common law doctrine was intended by the drafters of the code to remain undisturbed is bolstered by the fact that KRS 355.1–103

states that those principles of common law and equity which are not displaced by particular provisions of the code shall continue to apply subsequent to the code's enactment. *See also Restatement (Second) of Contracts* § 281, comment d (1981). Finally, it should also be noted that a proposed section of the code, § 3–803(3), and the related commentary would have codified the common law doctrine of accord and satisfaction. However, that section and the commentary, which ultimately were deleted from the code in order to avoid confusion and the possibility of abuse, did not cross-reference in any way to § 1–207. *See also, e.g., Hearst Corp. v. Lauerer, Markin & Gibbs, Inc.,* 37 Ohio App.3d 87, 524 N.E.2d 193 (1987); *Cass Construction Co., Inc. v. Brennan,* 222 Neb. 69, 382 N.W.2d 313 (1986).

I am also of the opinion that the majority's reliance upon *Horn, supra,* in concluding that the common law doctrine of accord and satisfaction has been superseded by the passage of KRS 355.1–207, is misplaced. Indeed, as the majority opinion acknowledges, § 1–102 of the code is to be "liberally construed and applied to promote its underlying purposes and policies." However, the court in *Horn* specifically relied in large part on the New York legislature's own comment to § 1–207 which, unlike the official commentary to the uniform code, clearly permits § 1–207 to be construed so as to alter the doctrine of accord and satisfaction in relation to a conditional check situation. As the Kentucky legislature adopted no such modification to the uniform code's official commentary, the majority's reliance upon *Horn* as authority in the instant action is unjustified.

For these reasons, I would affirm the trial court's summary judgment.