## Joe Frangiosa v. Dimitrios Kapoukranidis

[627 A.2d 351]

No. 92-345

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed May 7, 1993

*Robert R. Bent* of *Zuccaro, Willis & Bent,* St. Johnsbury, for Plaintiff-Appellant.

*William P. Neylon* of *Swainbank, Morrissette & Neylon,* St. Johnsbury, for Defendant-Appellee.

**Gibson, J.** Plaintiff appeals from a summary judgment of the Caledonia Superior Court, which held that a check tendered by defendant bearing the statement "Paid in Full" constituted an accord and satisfaction upon its being cashed by plaintiff. Because plaintiff clearly reserved his rights when he endorsed the check, we reverse.

Plaintiff provided electrical services to defendant at his restaurant business in Lancaster, New Hampshire. He began work before he offered an estimate of its total cost. After one day at the job, plaintiff estimated that the project would cost from $3,000 to $4,000, exclusive of materials. A week later, plaintiff advised defendant that the scope of the work was growing, and upon its completion he tendered a bill for $8,014.74. Defendant told plaintiff he thought the bill should be between $4,000 and $5,000, and after an exchange of demands, defendant wrote plaintiff that he believed the correct amount was $4,000. He tendered a check in that amount inscribed with the words "Paid in Full." Plaintiff endorsed the check, adding to his endorsement the words "Catamount Electric Endorsed under Protest With all Rights and Remedies Reserved."

Plaintiff brought suit for the unpaid portion of the total bill. The trial court concluded that there was a clear dispute as to the amount of the debt, and that the principles enunciated in *Gallagher Lumber Co. v. Shapiro,* 137 Vt. 139, 400 A.2d 984

(1979), required granting defendant's motion for summary judgment. The present appeal followed.

In *Gallagher Lumber*, we held that a check bearing a statement that it was intended in full payment of a disputed claim constituted an accord and satisfaction as a matter of law, notwithstanding the fact that prior to negotiation the payee crossed out the terms on which the check had been tendered. *Id.* at 142, 400 A.2d at 986. Although we specifically stated that the result was not affected by the Uniform Commercial Code (UCC), we did not discuss the text of 9A V.S.A. § 1–207, which provides:

> A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as "without prejudice", "under protest" or the like are sufficient.

The premise in *Gallagher Lumber* was that the language of 9A V.S.A. § 1–207 did not clearly supersede the common-law principles of accord and satisfaction. *Id.* at 141, 400 A.2d at 985; see 1 V.S.A. § 271 (common law "not repugnant to the constitution or laws shall be laws in this state"); *Langle v. Kurkul*, 146 Vt. 513, 516, 510 A.2d 1301, 1303 (1986) (statute changes common law only if its intention to do so is stated "in clear and unambiguous language, or if the statute is clearly inconsistent with the common law" or attempts to cover entire subject matter).

Since 1979 when we decided *Gallagher Lumber*, there has been extensive debate among scholars and jurists over whether UCC § 1–207 should supersede the common-law doctrine of accord and satisfaction with respect to acceptance "under protest" (or similar language of reservation) of payments purporting to be "payments in full." Courts are split on the question.[1]

---

[1] The following are examples of cases holding that UCC § 1–207 has altered the doctrine of accord and satisfaction by permitting the creditor to reserve rights when negotiating an instrument, or that have questioned the continuing validity of the common-law rule: *Bivins v. White Dairy*, 378 So. 2d 1122, 1124 (Ala. Civ. App. 1979); *American Food Purveyors, Inc. v. Lindsay*

With the benefit of more than a decade of analysis of the issue in other jurisdictions, we are now convinced that a conditional statement on a check, followed by an endorsement clearly reserving rights, should not continue to be recognized as an accord and satisfaction. This conclusion is based on the plain language of § 1–207, the need for consistency with the balance of the UCC, and increasing evidence that the common-law outcome is harsh and arbitrary and does not comport with modern commercial needs and realities. We hold that this interpretation is sufficiently clear to meet the test of *Langle v. Kurkul*, 146 Vt. at 516, 510 A.2d at 1303, and 1 V.S.A. § 271.

## I.

Initially, we must decide whether the Uniform Commercial Code applies at all to the facts underlying the present case, as the check was issued in payment of personal services, which the Code does not cover. Some courts have declined to apply § 1–207 to payments by check for personal services, despite the fact that UCC Article 3 (commercial paper) applies to checks. See, e.g., *Hixson v. Cox*, 633 S.W.2d 330, 331 (Tex. Ct. App. 1982). But the *Hixson* view radically constricts the application of the UCC, allowing it to govern some checks but not others, depending on the reason the check was issued. This approach results in confusion and a lack of uniformity, directly contrary to the purposes of the UCC. See 9A V.S.A. § 1–102(2) (purposes of UCC

---

*Meats, Inc.*, 265 S.E.2d 325, 327 (Ga. Ct. App. 1980); *Ditch Witch Trenching Co. v. C & S Carpentry Serv., Inc.*, 812 S.W.2d 171, 173 (Ky. Ct. App. 1991); *Horn Waterproofing Corp. v. Bushwick Iron & Steel Co.*, 488 N.E.2d 56, 59, 497 N.Y.S.2d 310, 313 (1985); *AFC Interiors v. DiCello*, 544 N.E.2d 869, 873 (Ohio 1989); *Scholl v. Tallman*, 247 N.W.2d 490, 492 (S.D. 1976).

A greater number of jurisdictions have sustained the common-law rule of accord and satisfaction against a claim under UCC § 1–207. The following are examples of such cases: *Milgram Food Stores, Inc. v. Gelco Corp.*, 550 F. Supp. 992, 997 (W.D. Mo. 1982) (interpreting Missouri law); *Air Van Lines, Inc. v. Buster*, 673 P.2d 774, 779 (Alaska 1983); *R.A. Reither Constr., Inc. v. Wheatland Rural Elec. Ass'n*, 680 P.2d 1342, 1344 (Colo. Ct. App. 1984); *County Fire Door Corp. v. C.F. Wooding Co.*, 520 A.2d 1028, 1035 (Conn. 1987); *Cass Constr. Co. v. Brennan*, 382 N.W.2d 313, 320 (Neb. 1986); *Sharpe v. Nationwide Mut. Fire Ins. Co.*, 302 S.E.2d 893, 894 (N.C. Ct. App. 1983); *Marton Remodeling v. Jensen*, 706 P.2d 607, 610 (Utah 1985); *Flambeau Prods. Corp. v. Honeywell Information Sys., Inc.*, 341 N.W.2d 655, 664 (Wis. 1984).

include simplifying and clarifying the law of commercial transactions and making it uniform); *Robinson v. Garcia*, 804 S.W.2d 238, 243 (Tex. Ct. App. 1991) (expressly disagreeing with *Hixson*).

■ The better rule is that the UCC should apply to all checks, regardless of the purpose for which they are issued. *Air Van Lines, Inc. v. Buster*, 673 P.2d 774, 779 n.4 (Alaska 1983) (court expressly declined to limit § 1–207 to sale of goods); *Horn Waterproofing Corp. v. Bushwick Iron & Steel Co.*, 488 N.E.2d 56, 61, 497 N.Y.S.2d 310, 315 (1985).

## II.

Because we hold that § 1–207 applies to the instant transaction, we must decide whether the language of this statute allows a creditor to negate the issuer's intent on a full-payment check by means of a clear reservation of rights. The text of § 1–207 appears to pursue the "obvious policy . . . that a party be permitted to accept non-conforming performance while reserving its rights under the contract." *Robinson*, 804 S.W.2d at 246; see Walter, *The Rise and Fall of U.C.C. Section 1–207 and the Full Payment Check—Checkmate?*, 21 Loy. L.A.L. Rev. 81, 98–99 (1987). As one commentator has stated:

> We are persuaded that 1–207 should and does apply to this transaction for several reasons. First, that is the most obvious reading of the language of 1–207 . . . . It is also the position that has been adopted by a number of states in local commentary added to 1–207 and, in our view, it is the interpretation that at least mildly inclines toward the most sensible outcome.

1 J. White & R. Summers, Uniform Commercial Code § 13–24, at 691 (3d ed. 1988) (footnote omitted).

Several state statute commentaries address the issue. The Delaware comment speaks of the "harsh effect of cases holding that a debt is discharged in its entirety by acceptance of part payment which the debtor tenders as full payment of an unliquidated claim." Del. Code Ann. tit. 6, § 1–207 comment (1974). The New Hampshire comment states that "the section would, in code-covered situations, permit acceptance of a part performance or payment tendered in full settlement without the accep-

tor gambling with his legal right to demand the remainder of the performance or payment . . . ." N.H. Rev. Stat. Ann. § 382-A:1–207 comment (1961). The comment to New York's version of § 1–207 is similar to that in New Hampshire. See N.Y. U.C.C. § 1–207 comment (McKinney 1964).

The New York Court of Appeals articulated the same general rationale in *Horn Waterproofing*:

> [T]he common-law doctrine of accord and satisfaction creates a cruel dilemma for the good-faith creditor in possession of a full payment check. Under that rule, the creditor would have no other choice but to surrender the partial payment or forfeit his right to the remainder. We are persuaded, however, that the common law was changed with the adoption of section 1–207 pursuant to which a fairer rule now prevails.

488 N.E.2d at 59, 497 N.Y.S.2d at 313 (citation omitted). The court relied on the Report of the State of New York Commission on Uniform State Laws, which took the position that the common-law doctrine was changed by the Code:

> "This section permits a party involved in a Code-covered transaction to accept whatever he can get by way of payment, performance, etc., without losing his rights to demand the remainder of the goods, to set-off a failure of quality, or to sue for the balance of the payment, so long as he explicitly reserves his rights.
> . . ."The Code rule would permit, in Code-covered transactions, the acceptance of a part performance or payment tendered in full settlement without requiring the acceptor to gamble with his legal right to demand the balance of the performance or payment."

*Id.* at 60, 497 N.Y.S.2d at 314 (quoting Report of the State of N.Y. Comm'n on Uniform State Laws, at 19–20 (1961)).

The New York Commission's report and the other state commentaries describe a rule far more suited to promoting accord and satisfaction between parties than the common-law rule. An important element in achieving settlement of a dispute is for each of the parties to have full knowledge of the issues, the law, and the interests and positions of the adversary. The common-law rule on full-payment checks is a debtor's ultimatum. It

tends to obscure the line between a true dispute as to the amount of a debt and a dispute arising solely because a debtor seeks to pressure a creditor into choosing between an inadequate, but immediate, payment and litigation.

In sum, applying § 1–207 to clear reservations of right inscribed on full-payment instruments will discourage tactical gamesmanship between litigants, will balance the power between negotiating parties appropriately, and will leave untouched the debtor's option of negotiating an effective accord and satisfaction.

The rationale of the cases upholding the common-law rule on full-payment checks against the UCC, and the principal argument of appellee in the present case, is that applying § 1–207 would undermine the principles of offer and acceptance, which are the essence of contract formation. It is, however, no defense of the common-law rule to state that § 1–207 alters it. Statutory amendments of common-law rules are routinely enacted and now commonplace. The UCC itself is an excellent example of a statute that displaces much of the common law. Indeed, one of its basic purposes was to replace common law variations by jurisdiction and achieve national uniformity in commercial law.[2]

It is true that under this interpretation of § 1–207, a debtor's attempt to end a dispute with a creditor by tendering a check with a conditional legend will be thwarted. As one commentator stated:

> Besides operating as an unnecessary destruction of a valuable common law doctrine, the expansive interpretation of U.C.C. § 1–207 . . . conflicts with another basic principle of the Uniform Commercial Code, the duty of good faith imposed by § 1–203, certainly the more fundamental

---

[2] 9A V.S.A. § 1–102 states, in relevant part:

§ 1–102. Purposes; rules of construction; variation by agreement

(1) This title shall be liberally construed and applied to promote its underlying purposes and policies.

(2) Underlying purposes and policies of this title are
   (a) to simplify, clarify and modernize the law governing commercial transactions;
   (b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties;
   (c) to make uniform the law among the various jurisdictions.

concept. . . . It is unfair to the party who writes the check thinking that he will be spending his money only if the whole dispute will be over, to allow the other party, knowing of that reasonable expectation, to weasel around the deal by putting his own markings on the other person's checks.

6 Corbin on Contracts § 1279, at 69 (Supp. 1992). We do not agree that our interpretation of § 1–207 is unfair. The debtor's fair expectations will not be thwarted, any more than they would be if the debtor relied on any other common-law rule overridden by statute.

It has been suggested that our reading of § 1–207 will result in greater numbers of unresolved disputes, with a consequent increase in cases coming to the courts. The ability of the parties to reach an accord and satisfaction is in no way limited by this reading of the Code. All that is eliminated is the ability of the debtor to incorporate a binding take-it-or-leave-it offer within a partial payment. We are confident that our holding will result in less, not more, litigation. It may well improve the likelihood of settlement by focusing parties on the question of what is owed, rather than the subsidiary issue of whose language on a check should be deemed legally binding. Cases that do reach the courts will focus on the underlying legal issues, and not the ancillary and unnecessary questions spawned by debtor-creditor gamesmanship, particularly the question of whether a debtor and creditor have a bona fide dispute. See Note, *Role of the Check in Accord and Satisfaction: Weapon of the Overreaching Debtor*, 97 U. Pa. L. Rev. 99, 100–09 (1948) (discussing debtor's tactic of economically exploiting creditor's need for payment). It is clear that this outcome most closely fulfills the legislative policies underlying adoption of 9A V.S.A. § 1–207.

■ We hold that where a debtor tenders a check to a creditor as payment in full for less than the amount alleged to be owing on the debt, the creditor may accept the check as partial payment, so long as the creditor makes a reservation of rights in a manner that clearly and explicitly notifies the debtor that the check is not accepted as full payment on the debt and that no accord and satisfaction has been effected.

*Reversed and remanded.*