DECISION
In this civil action, plaintiff asserts claims for breach of contract and unjust enrichment. The matter was submitted on an agreed statement of facts and memoranda.
 Statement of Facts
Sarra Engineering Co., Inc. ("Sarra") is a Rhode Island company located at One Harry Street, Cranston, Rhode Island. Sarra is in the mechanical contracting business and installed heating, ventilation, and air conditioning ("HYAC") systems. Promac is a Rhode Island corporation located at 450 Old Baptist Road, North Kingstown, Rhode Island. Promac is engaged in the business of general contracting.
In 1989, the State of Rhode Island, in reliance on the design and contract administration services of the architectural firm of Baker Conlon Architects, AIA (the "Architects"), invited contractors to submit bids for proposed additions and alterations to the Rhode Island Youth Correctional Center located in Cranston, Rhode Island (the "Prison Project"). The Architects and its subconsultants prepared the Specifications for the Prison Project (the "Specifications") and oversaw the job as the supervising architect.
Promac submitted a bid on the Prison Project having secured a bid from Sarra for the HVAC work which is described in Division 15 of the Specifications. Sarra did not bid on the plumbing work and a sprinkler system which is also included in Division 15. After submitting the low, responsive bid on the Prison Project, Promac was awarded the Prison Project contract as the general contractor. Promac accepted Sarra's bid on the Prison Project HVAC work.
On or about November 21, 1989, Sarra and Promac signed a Sub-Contract Agreement in which the subcontractor, Sarra, agreed to perform and complete the following work: "DIVISION 15; HVAC COMPLETE, LABOR AND MATERIALS." Promac agreed to pay Sarra $810,000 under the Sub-Contract Agreement. The parties agree that Sarra performed and completed its work under the Sub-Contract Agreement on or before April 1, 1992, except that Promac contends Sarra was also required to provide and failed to install high security access.
The parties agree and stipulate that The Aetna Casualty 
Surety Company ("Aetna"), the bonding company, issued the payment bond for the Prison Project. According to the terms of the Aetna bond, it remains in effect until Promac has paid any judgment entered in favor of Sarra.
 Sarra's Claim for Interest
The parties are in agreement that Promac owed $12,396.00 to Sarra on April 1, 1992. Promac tendered a check to Sarra, dated August 25, 1994, in the amount of $12,396.00 which was marked "SETTLEMENT; PAID IN FULL; FINAL PAYMENT" along with a full release of all claims. Sarra refused to cash the August 25th check and sign the release. Promac tendered another check to Sarra dated May 11, 1998, which was cashed by Sarra.
Sarra argues that there was no dispute regarding the fact Promac owed $12,396.00 to Sarra on April 1, 1992, but the parties continued to disagree about a backcharge relating to the installation of high security access panels. See discussion infra High Security Access Panels. As such, Sarra refused to sign the August 25th check as acceptance was conditioned upon final and full settlement of all claims. Since Promac failed to pay the amount owing on a timely basis, Sarra contends it is entitled to statutory interest pursuant to G.L. 1956 § 9-21-10 from April 1, 1992 through May 13, 1998.
Promac counters that Sarra is barred from seeking interest on $12,396.00 as it refused to cash the August 25th check. Promac argues that Sarra violated the "doctrine of avoidable consequences" and failed to mitigate its damages since G.L. 1956 § 6A-1-207 allowed Sarra to cash the August 25th check by simply marking the check "without prejudice" or "under protest." As Sarra acted unreasonably in not cashing the August 25th check, Promac contends that interest is due from April 1, 1992 through August 24, 1994.
The general rule of law regarding partial payment of a disputed claim tendered on the condition of payment in full is that the party's acceptance amounts to an accord and satisfaction even if the party cashes the check under protest. See NeoSicilia Loan Co. v. Perry, 57 R.I. 441, 444, 190 A. 457, 459 (1937) ("A tender upon condition is not good as a tender and payment of a less sum than is due on an undisputed claim, even though it be offered in full settlement . . . [t]he case is different where there is a real dispute over the amount due and where the parties to the suit have tendered and accepted respectively an amount in compromise and settlement of the claim"); Hull v. Johnson, 22 R.I. 66, 46 A. 182 (1900) (where plaintiff cashed check for a disputed amount by striking out payment in full, the court held an accord and satisfaction occurred). However, the foregoing case law predated the enactment of § 1-207 of the Uniform Commercial Code. An argument can now be asserted that the general rule has been superseded by U.C.C. § 1-207.
Specifically, G.L. 1956 § 6A-1-207 provides that "[a] party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved." A party may use words such as "without prejudice," "under protest," or the like. Id. The argument as to whether the general law of accord and satisfaction is superseded by the enactment of § 6A-1-207 is an issue of first impression in Rhode Island, and this Court can glean guidance from the rulings of sister states which have enacted a version of U.C.C. § 1-207. However, even with the adoption of U.C.C. § 1-207 by the various states, the jurisdictions are split as to whether general rule of law of accord and satisfaction is superseded.
In the jurisdictions that follow U.C.C. § 1-207, a party who explicitly writes the magic words of "without prejudice," "under protest," or the like on a check for a disputed claim will avoid an accord and satisfaction. See Ditch Witch Trenching Co. v. C S Carpentry Serv., Inc., 812 S.W.2d 171, 173 (Ky. App. 1991) (a party may accept a check marked "payment in full" on a disputed claim if the rights to sue for the balance are explicitly reserved); AFC Interiors v. DiCello, 544 N.E.2d 869, 873 (Ohio 1989) (U.C.C. § 1-207 supersedes the doctrine of accord and satisfaction where creditor explicitly reserves all rights by endorsing check "under protest"); Scholl v. Tallman,247 N.W.2d 490, 492 (S.D. 1976) (an explicit reservation of rights is not an accord and satisfaction); Frangiosa v. Kapoukranidis,627 A.2d 351, 353 (Vt. 1993) ("conditional statement on a check, followed by an endorsement clearly reserving rights, should not continue to be recognized as an accord and satisfaction"). In other jurisdictions, the adoption of U.C.C. § 1-207 will not supersede the general law of accord and satisfaction even if the party explicitly writes the magic words on a check for a disputed claim. Air Van Lines, Inc. v. Buster, 673 P.2d 774, 779 (Alaska 1983) (the court agrees with jurisdictions that hold U.C.C. § 1-207 "does not alter the common law rules regarding accord and satisfaction by tender of a full payment check, and which limit section 1-207 to continuing disputes on executory contracts");Stultz Elec. Works v. Marine Hydraulic Eng'g Co.,484 A.2d 1008, 1012 (Me. 1984) (The common law doctrine of accord and satisfaction does not alter § 1-207); Majestic Bldg. MaterialCorp. v. Gateway Plumbing, Inc., 694 S.W.2d 762, 764 (Mo. App. 1985) ("[t]he mere payment of a sum less than that due, even with a restrictive endorsement, does not effect an accord and satisfaction").
Due to the fact that there is no case law interpreting the effect of § 6A-1-207 on the general law of accord and satisfaction and the split of authority in sister jurisdictions as to its interpretation, this Court finds that Sarra did not act unreasonably in failing to cash the August 25th check. Sarra could not have known if cashing the August 25th check would have constituted or avoided an accord and satisfaction. As the $12,396.00 amount was undisputed, Promac could have easily paid the amount on a timely basis by not conditioning the acceptance of the check upon final and full settlement of all claims. As such, Sarra is entitled to interest on $12,396.00 from April 1, 1992 through May 13, 1998 pursuant to G.L. 1956 § 9-21-10.
 High Security Access Panels
The parties are in dispute as to whether Sarra is responsible for a backcharge from Promac for the installation of high security access panels. Promac expended $8,235.45 in costs and labor for the high security access panels. Division 10 of the Specifications provides for the installation of high security access panels, while Division 15 requires standard access panels for the HVAC work.
Sarra argues that the Sub-Contract Agreement included work set forth only in Division 15 of the Specifications. Division 15 of the Specifications did not require Sarra to provide high security access panels, whereas Division 10 did contain the requirements for high security access panels. However, Sarra contends that it did not bid on Division 10 of the Specifications and the foregoing section required Promac to install the panels. Furthermore, Promac acknowledged in its letter to the Architects that Division 15 only specified the use of standard access panels. In response, the Architects sent a letter to Promac discussing its responsibility for providing high security access panels. More importantly, Promac submitted its own cost figure of $900.00 for the high security access panels in Division 10. As such, Sarra is entitled to $8,235.45 plus interest from April 1, 1992 to the date of judgment.
On the other hand, Promac's lengthy argument can be summarized to stand for the proposition that basic contract principles dictate the HVAC access panel requirements in Division 15 must be read in conjunction with the requirement of high security access panels set forth in Division 10. Promac asserts that Sarra cannot read and construe Division 15 in a vacuum relative to the remaining sections of the Specifications. Since the Specifications should be read as whole under basic contract law, Sarra was responsible for providing the high security access panels.
The determinative issue in settling this dispute is whether the Specifications, specifically Division 10, is incorporated by reference in the Sub-Contract Agreement by the use of the phrase "as per plans and specifications." Since the Rhode Island Supreme Court has not addressed the issue and after researching sister jurisdictions, the Court determines that a hard and fast rule does not exist in answer to the foregoing question. The mere inclusion of the phrase "as per plans and specifications" does not necessarily incorporate the prime contract into the subcontract. A contract "is ambiguous only when it is reasonably and clearly susceptible to more than one interpretation."Rotelli v. Catanzaro, 686 A.2d 91, 94 (R.I. 1996). Since the inclusion of the phrase "as per plans and specifications" is susceptible of more than one interpretation, the Sub-Contract Agreement contains an ambiguous contract provision.
In construing the ambiguous contract provision of the Sub-Contract Agreement, this Court must examine the circumstances surrounding the inclusion of the ambiguous provision and the intentions of parties. Flynn v. Flynn, 615 A.2d 119, 121 (R.I. 1992). In essence, the Court must determine to what extent the parties intended to be bound by the incorporated document, the Specifications. Generally, the "construction rule of contracts instructs that `a reference by the contracting parties to an extraneous writing for a particular purpose makes it part of their agreement only for the purpose specified.'" Rhode IslandHosp. Trust Nat'l Bank v. Ohio Casualty Ins. Co., 613 F. Supp. 1197, 1202 (D.R.I. 1985) (citing Guerii Stone Co. v. P.J. CarlinConstr. Co., 240 U.S. 264, 277, 36 S.Ct. 300, 306, 60 L.Ed. 636 (1916)); United States Steel Corp. v. Turner Constr. Co., 560 F. Supp. 871, 873-74 (S.D.N.Y. 1983) ("incorporation clauses in a construction subcontract bind a subcontractor only to the prime contract provisions which relate to the scope, quality, character and manner of the work to be performed by the subcontractor").
In determining the intention of the parties, the Court will discuss Division 15 of the Specifications. Division 15 has a section that specifically refers to related work and incorporates other sections of the Specifications into the work being performed in Division 15. See Specifications, Division 15, Part 1 General, 1.02 Related Work, at 15050-1 and 2. Nowhere in the Related Work section is Division 10 referenced. Promac makes an argument that the term contractor and subcontractor are one in the same. However, Promac's argument fails as the "Owner and Architect only recognize one Contractor as a party to this contract." See Specifications, Division 15, Part 1 General, 1.02 Related Work, subsection A. 01010 Summary of the Work, at 15050-1. Additionally, 1.02 Related Work addresses that Division 15 includes all the sections "herein and listed in the table of contents." Once again, Division 10 is not mentioned anywhere in Division 15. More importantly, the section referring to access panels in Division 15 does not mention high security access panels or reference Division 10. See Specifications, Division 15, Part 1 General, 1.20 Accessibility, at 15050-8 and 9. Lastly, the HVAC section of Division 15 neither includes high security access panels as the work included nor does it reference Division 10 in the related work section. See Specifications, Division 15, 15700 HVAC, at 15700-1 and 2. "Absent express provision, the plans and specifications cannot operate to either restrict or extend the scope of the contract to subjects other than those covered by the contract." Oxford Dev. Corp. v. RausauerBuilders, Inc., 304 N.E.2d 211, 214 (Ind. 1973).
After reviewing Division 15 of the Specifications, this Court finds that Division 10 was not incorporated by reference into the Sub-Contract Agreement. The Specifications was incorporated into the Sub-Contract Agreement only to the extent and purposes specified in Division 15.
For the above stated reasons, the Court finds that Sarra is entitled to $8,235.45 plus interest from April 1, 1992 to the date of the entry of judgment.
Counsel for the plaintiff shall prepare the appropriate judgment for entry.