OPINION OF THE COURT
Jasen, J.
This appeal presents an issue of first impression: whether the common-law doctrine of accord and satisfaction has been superseded by operation of Uniform Commercial Code § 1-207 in situations involving the tender of a negotiable instrument as full payment of a disputed claim.
The relevant facts are uncomplicated. The parties entered into an oral agreement whereby plaintiff was to repair the leaking roof on defendant’s building. After two days work, plaintiff concluded that a new roof was needed and submitted a bill for work already done. Defendant disputed the amount charged and plaintiff revised the bill downward from $1,241 to $1,080. Defendant remained unsatisfied with the charges and sent plaintiff a check for only $500. The check bore the following notation affixed on the reverse side: "This check is accepted in full payment, settlement, satisfaction, release and discharge of any and all claims and/or demands of whatsoever kind and nature.” Directly thereunder, plaintiff printed the words "Under Protest”, indorsed the check with its stamp, and deposited the $500 into its account.
Plaintiff then commenced this action in Civil Court seeking $580 as the balance due on its revised bill. Defendant moved *323 for summary judgment on the ground that plaintiffs acceptance and negotiation of the check constituted an accord and satisfaction. The motion was denied and the Appellate Term affirmed. The court held that the Uniform Commercial Code (the Code) was applicable to the type of commercial transaction in which the parties were involved and that, under the provisions of section 1-207, plaintiff was entitled to reserve its right to demand the balance due.
On appeal by leave of the Appellate Term, the Appellate Division reversed, granted defendant’s motion, and dismissed the complaint. The majority of that court held that the parties’ agreement, being a contract for the performance of services, fell outside the scope of the Code. It was, therefore, concluded that the common law applied and that the doctrine of accord and satisfaction precluded plaintiffs recovery. In dissent, Justice Weinstein argued that application of the common-law doctrine to the facts of this case is inequitable and needlessly constricts the modernizing effect of the Code. We now reverse and hold that, under section 1-207 of the Code, a creditor may preserve his right to the balance of a disputed claim, by explicit reservation in his indorsement of a check tendered by the debtor as full payment.
The effect of Code § 1-207 upon the common-law doctrine of accord and satisfaction has been much debated.[1] Indeed, the courts that have addressed the issue in this State have ren *324 dered conflicting decisions,[2] and our sister state courts are likewise divided.[3] In our view, applying section 1-207 to a "full payment” check situation, to permit a creditor to reserve his rights and, thereby, preclude an accord and satisfaction, more' nearly comports with the content and context of the statutory provision and with the legislative history and underlying purposes of the Code as well, and is a fairer policy in debtor-creditor transactions.
It has long been the general rule in this State that "if a debt or claim be disputed or contingent at the time of payment, the payment, when accepted, of a part of the whole debt is a good satisfaction and it matters not that there was no *325 solid foundation for the dispute. The test in such cases is, Was the dispute honest or fraudulent? If honest, it affords the basis for an accord between the parties, which the law favors, the execution of which is the satisfaction.” (Simons v American Legion of Honor, 178 NY 263, 265; see also, Nassoiy v Tomlinson, 148 NY 326.)
The theory underlying this common-law rule of accord and satisfaction is that the parties have thus entered into a new contract displacing all or part of their original one. (Merrill Lynch Realty v Skinner, 63 NY2d 590, 596.) Although the creditor might have been confronted with an "embarrassing * * * choice” upon the debtor’s presentment to him of partial payment (Hudson v Yonkers Fruit Co., 258 NY 168, 172), such as in the case of a "full payment” or "conditional” check, nevertheless, the rule of accord and satisfaction has generally been accepted as a legitimate and expeditious means of settling contract disputes. (See, Merrill Lynch Realty v Skinner, supra; Post v Thomas, 212 NY 264; 6 Corbin, Contracts § 1276 et seq. [2d ed]; Restatement [Second] of Contracts § 281.) As this court stated more than 70 years ago: "The law wisely favors settlements, and where there is a real and genuine contest between the parties and a settlement is had without fraud or misrepresentation for an amount determined upon as a compromise between the conflicting claims such settlement should be upheld, although such amount is materially less than the amount claimed by the person to whom it is paid.” (Post v Thomas, supra, at pp 273, 274.)
Still, where the creditor is presented with partial payment as satisfaction in full, but, nevertheless, wishes to preserve his claim to the balance left unpaid, it cannot be gainsaid that conflicting considerations of policy and fairness are implicated. This is particularly so in the case of a full payment check. On the one hand, the debtor, as the master of his offer, has reason to expect that his offer will either be accepted or his check returned. At the same time, however, the creditor has good cause to believe that he is fully entitled to retain the partial payment that is rightfully his and presently in his possession, without having to forfeit entitlement to whatever else is his due.
In dismissing these latter considerations with specific regard to the applicability of Code § 1-207 to a check tendered as "full payment”, one commentary argued that: "Besides operating as an unnecessary destruction of a valuable common law doc *326 trine, the expansive interpretation of U.C.C. § 1-207 * * * conflicts with another basic principle of the Uniform Commercial Code, the duty of good faith imposed by § 1-203, certainly the more fundamental concept * * * It is unfair to the party who writes the check thinking that he will be spending his money only if the whole dispute will be over, to allow the other party, knowing of that reasonable expectation, to weasel around the deal by putting his own markings on the other person’s checks. There is no reason why § 1-207 should be interpreted as being an exception to the basic duty of good faith, when it is possible to interpret the two sections consistently. The academic writers who support this result offer no analysis, to the current knowledge of this treatise, which would justify licensing the recipient of the check to so deceive the drawer.” (Corbin, Contracts § 1279, at 473 [Kaufman Supp, 1984].)
However, an entirely different conclusion is reached in another commentary which explains that:
"Offering a check for less than the contract amount, but 'in full settlement’ inflicts an exquisite form of commercial torture on the payee. If the offer is reasonable it creates a marvelous anxiety in some recipients: 'Shall I risk the loss of $9,000 for the additional $1,000 that the bloke really owes me?’ In general the law has authorized such drawer behavior by regarding such a check as an offer of accord and satisfaction which the payee accepts if he cashes the check. Traditionally the payee could write all manner of disclaimers over his indorsement without avail; by cashing the check he was held to have accepted the offer on the drawer’s terms. Even if he scratched out the drawer’s notation or indorsed it under protest he was deemed to have accepted subject to the conditions under which the drawer offered it.
* * *
"However, we believe * * * that 1-207 authorizes the payee to indorse under protest and accept the amount of the check without entering an accord and satisfaction or otherwise forsaking his claim to any additional sum allegedly due him.” (White and Summers, Uniform Commercial Code § 13-21, at 544-547 [2d ed].)
We concur with the latter view. Indeed, the common-law doctrine of accord and satisfaction creates a cruel dilemma for the good-faith creditor in possession of a full payment check. *327 Under that rule, the creditor would have no other choice but to surrender the partial payment or forfeit his right to the remainder. (See generally, Note, Role of the Check in Accord and Satisfaction: Weapon of the Overreaching Debtor, 97 U Pa L Rev 99.) We are persuaded, however, that the common law was changed with the adoption of section 1-207 pursuant to which a fairer rule now prevails.
Section 1-207 provides: "A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as 'without prejudice’, 'under protest’ or the like are sufficient.” The plain language of the provision, "without much stretching”,[4] would seem applicable to a full payment check.[5] A fortiori, if liberally construed, as the Code’s provisions are explicitly intended to be,[6] it seems clear that the reach of section 1-207 is sufficiently extensive to alter the doctrine of accord and satisfaction by permitting a creditor to reserve his rights though accepting the debtor’s check.
The Comment prepared by the National Conference of Commissioners on Uniform State Laws and the American Law Institute is fairly subject to a variety of interpretations as to the purpose of section 1-207. It simply does not, however, specifically address the law of accord and satisfaction and how *328 it might have been altered.[7]
[8]By contrast, the Report of the State of New York Commission on Uniform State Laws quite clearly took the position that the common-law doctrine would be changed. With specific reference to section 1-207, the report stated:
"This section permits a party involved in a Code-covered transaction to accept whatever he can get by way of payment, performance, etc., without losing his rights to demand the remainder of the goods, to set-oíf a failure of quality, or to sue for the balance of the payment, so long as he explicitly reserves his rights.
"* * * In Nassoiy v. Tomlinson, 148 N.Y. 326, 42 N.E. 715 (1896), the debtor paid no more than the exact amount he claimed was due. The court held that the conditional payment was payment of an unliquidated claim if any part was disputed, and that the acceptance of the payment discharged the entire debt. [Citations omitted.] The Code rule would permit, in Code-covered transactions, the acceptance of a part performance or payment tendered in full settlement without requiring the acceptor to gamble with his legal right to demand the balance of the performance or payment.” (Report of Commn on Uniform State Laws to Legislature, at 19-20 [1961].)®
*329 This interpretive analysis, which was submitted to the Legislature together with the Commission’s recommendation for enactment of the Code, unmistakeably addresses the common-law doctrine and notes that the section permits a reservation of rights upon acceptance of partial payment where an accord and satisfaction might otherwise have resulted. Particularly significant is the reference to Nassoiy v Tomlinson (148 NY 326, supra), a seminal decision in this State applying the doctrine of accord and satisfaction under facts involving a full payment check. This commentary clearly apprised the Legislature that section 1-207 would change the rule upheld in that case. Moreover, it is notable that the analysis explicitly speaks of the acceptance of part "payment tendered in full settlement.” The section was clearly not deemed restricted to situations involving the acceptance of goods or such other "performance” in part.[9]
This view derives further support from the very context of section 1-207 within the Code. The provision is set forth in the introductory article 1, among the general provisions of the Code dealing with such matters as its title, underlying purposes, general definitions, and principles of interpretation. Presumably, section 1-207, as with other provisions in the introductory article, is to apply to any commercial transaction within the reach of one of the substantive articles — i.e., to any "Code-covered” transaction, as denominated in the New York Annotations. There is simply no language in section 1-207 expressing or intimating a more restrictive intention to limit its application to specific kinds of transactions particular to one of the articles, or sections, of the Code such as the purchase and acceptance of goods (art 2), investment securities (art 8) or chattel paper (art 9). Rather, the nonlimiting language of section 1-207 and its placement in the Code with the other generally applicable provisions of article 1 is persuasive *330 that the section is, indeed, applicable to all commercial transactions fairly considered to be "Code-covered”.
Hence, the payment of a contract debt by check or other commercial paper and its acceptance by the creditor fall within the reach of section 1-207. Whether the underlying contract between the parties be for the purchase of goods, chattel paper or personal services, the use of a negotiable instrument for the purpose of payment or attempted satisfaction of a contract debt is explicitly and specifically regulated by the provisions of article 3 and, therefore, undeniably a Code-covered transaction. Consequently, a debtor’s tender of a full payment check is an article 3 transaction which is governed by section 1-207, regardless of the nature of the contract underlying the parties’ commercial relationship.
Indeed, Dean Rosenthal, who otherwise contended that section 1-207 was not originally intended by the drafters to alter the doctrine of accord and satisfaction by full payment checks, observed that:
"Article three ('Commercial Paper’), however, is a special case. Does the fact that a check is used as the device to effect a settlement in itself bring the transaction within the Code (and therefore make section 1-207 arguably applicable) even if the underlying transaction was one not otherwise covered by the Code? Article three contains no scope provision analogous to the "transactions in goods’ language in [article 2]. * * *
"[I]t seems fairly clear that if such a check is tendered in settlement, the transaction must be regarded as being within article three, and if section 1-207 is otherwise relevant its application cannot be avoided by showing either that article one was not meant to be applied to non-Code transactions or that the underlying obligation did not arise out of one of the other substantive articles of the Code.” (Rosenthal, Discord and Dissatisfaction: Section 1-207 of the Uniform Commercial Code, 78 Colum L Rev 48, 70.)[10]
*331 Finally, as Justice Weinstein noted below, such a readi section 1-207 would seem to promote the underlying pol and purposes of the Code. (See, Code § 1-102, supra, n 6.) construing the section to permit a reservation of rights whoever a negotiable instrument is used to make payment on a existing debt, regardless of the nature of the underlying obligation between the parties, the commercial law of negotiable instruments is rendered more simple, clear and uniform. Moreover, the policy embodied in section 1-207, to favor a preservation of rights despite acceptance of partial satisfaction of the underlying obligation, is thus extended to reach all commercial transactions in which the Code is implicated by reason of payment by an article 3 instrument. As a consequence, such a reading of section 1-207 serves to liberalize, or "de-technicalize”, that important branch of commercial law governing the full payment check. (See, White and Summers, Uniform Commercial Code § 4, at 14-18 [2d ed]; Cohen v Ricci, 120 Misc 2d 712, 715.)[11]
Application of the foregoing to the facts of this case is evident. Defendant presented a "full payment” check for $500 *332 in satisfaction of a debt in the amount of $1,080. Plaintiff indorsed the check below its notation, "Under Protest”, thereby indicating its intent to preserve all rights to the $580 balance. Such an explicit reservation of rights, falling squarely within section 1-207 as we construe that provision today, was an effective means of precluding an accord and satisfaction or any other prejudice to the rights thus reserved. Regardless of whether the underlying transaction between the parties was a contract for the performance of services rather than for the sale of goods, defendant’s tender of a check to plaintiff brought the attempted full payment or satisfaction of the underlying obligation within the scope of article 3, thereby rendering it a "Code-covered” transaction to which the provisions of section 1-207 are applicable.
Accordingly, the order of the Appellate Division should be reversed, with costs, and defendant’s motion to dismiss denied.
Chief Judge Wachtler and Judges Meyer, Simons, Kaye, Alexander and Titone concur.
Order reversed, etc.

. Among the commentaries which have taken an unequivocal position on the issue, see, e.g., 1 Anderson, Uniform Commercial Code § 1-207:7; 4 Anderson §§ 3-408:54 — 3-408:57 (3d ed) (the majority and sounder rule is that it does not apply to the full payment check); Calamari and Perillo, Contracts §§ 4-12, 5-16 (the debtor may now accept the check under protest and reserve his rights); 6 Corbin, Contracts § 1279 (2d ed, 1984 Supp) (the common-law doctrine is not affected); Restatement (Second) of Contracts § 281 comment d (§ 1-207 "need not be read as changing” the common law); White and Summers, Uniform Commercial Code § 13-21 (2d ed) (§ 1-207 permits a debtor to accept with explicit protest and still claim the balance due him). See also the discussions in the following: Hawkland, The Effect of UCC § 1-207 on the Doctrine of Accord and Satisfaction by Conditional Check, 74 Comm LJ 329; Rosenthal, Discord and Dissatisfaction: Section 1-207 of the Uniform Commercial Code, 78 Colum L Rev 48; Caraballo, The Tender Trap: UCC §1-207, 11 Seton Hall L Rev 445; Grosse and Goggin, Accord and Satisfaction and the 1-207 Dilemma, 89 Comm LJ 537; Comment, UCC Section 1-207 and the Full Payment Check, 7 U Dayton L Rev 421; Comment, Section 1-207, 1 Mem St U L Rev 425; Comment, Accord and Satisfaction: Conditional Tender by Check Under the Uniform Commercial Code, 18 Buffalo L Rev 539; Note, Does UCC Section 1-207 Apply to the Doctrine of Accord and Satisfaction by Conditional Check?, 11 Creighton L Rev 515.

. In the following, the courts of this State held that section 1-207 has superseded the common-law doctrine of accord and satisfaction in the "full payment” or "conditional” check situation: Braun v C.E.P.C. Distribs. (77 AD2d 358 [1st Dept]); Continental Information Sys. v Mutual Life Ins. Co. (77 AD2d 316 [4th Dept]); Ayer v Sky Club (70 AD2d 863 [1st Dept], appeal dismissed 48 NY2d 705); Kroulee Corp. v Klein & Co. (103 Misc 2d 441); Lange-Finn Constr. Co. v Albany Steel & Iron Supply Co. (94 Misc 2d 15); Cohen v Ricci (120 Misc 2d 712); Hanna v Perkins (2 UCC Rep Serv 1044). Some courts in this State have ruled otherwise: Geelan Mechanical Corp. v Dember Constr. Corp. (97 AD 2d 810 [2d Dept]); Schenectady Steel Co. v Trimpoli Gen. Constr. Co. (43 AD2d 234 [3d Dept], affd on other grounds 34 NY2d 939); Channave v Kraai (120 Misc 2d 859); Blottner, Derrico, Weiss & Hoffman v Fier (101 Misc 2d 371).

. In the following cases, the courts adopted the view that section 1-207 has altered the doctrine of accord and satisfaction by permitting the creditor to reserve his rights: United States v Consolidated Edison Co. (590 F Supp 266 [SDNY]); Majestic Bldg. Material Corp. v Gateway Plumbing (694 SW2d 762 [Mo Ct App]); Bivens v White Dairy (378 So 2d 1122 [Ala Civ App]); Miller v Jung (361 So 2d 788 [Fla Ct App]); Kilander v Blickle Co. (280 Ore 425, 571 P2d 503); Scholl v Tallman (247 NW2d 490 [SD]); Baillie Lbr. Co. v Kincaid Carolina Corp. (4 NC App 342, 167 SE2d 85).
On the other hand, an admittedly greater number of jurisdictions have held that the common-law rule is not affected: Milgram Food Stores v Gelco Corp. (550 F Supp 992 [WD Mo]); Stultz Elec. Works v Marine Hydraulic Eng. Co. (484 A2d 1008 [Me]); Flambeau Prods. Corp. v Honeywell Information Sys. (116 Wis 2d 95, 341 NW2d 655); Air Van Lines v Buster (673 P2d 774 [Alaska]); Schwab Tire Centers v Ivory Ranch (63 Ore App 364, 664 P2d 419 [distinguishing Kilander v Blickle Co., supra]); Connecticut Printers v Gus Kroesen (134 Cal App 3d 54, 184 Cal Rptr 436); Eder v Gervey Interiors (407 So 2d 312 [Fla Ct App] [noting a conflict with Miller v Jung, supra]); American Food Purveyors v Lindsay Meats (153 Ga App 383, 265 SE2d 325); Chancellor, Inc. v Hamilton Appliance Co. (175 NJ Super 345, 418 A2d 1326); Sharpe v Nationwide Mut. Fire Ins. Co. (62 NC App 564, 302 SE2d 893); Brown v Coastal Truckways (44 NC App 454, 261 SE2d 266 [distinguishing Baillie Lbr. Co. v Kincaid Carolina Corp., supra]); State Dept. of Fisheries v J-Z Sales Corp. (25 Wn App 671, 610 P2d 390); John v Burns (593 P2d 828 [Wyo]).

. Rosenthal, supra, n 1, at 49.

. See, id., at 49, 64; Hawkland, supra, n 1, at 329, 332. Despite the view shared by Rosenthal and Hawkland that section 1-207 was not intended by the drafters to alter the common-law doctrine in a full payment check situation, they each acknowledge that, if literally construed, the provision does permit such a result. See also, Calamari and Perillo, supra, n 1 § 5-16, at 197; White and Summers, supra, n 1 § 13-21, at 547.

. UCC § 1-102 provides in part:
"(1) This Act shall be liberally construed and applied to promote its underlying purposes and policies.
"(2) Underlying purposes and policies of this Act are
"(a) to simplify, clarify and modernize the law governing commercial transactions;
"(b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties;
"(c) to make uniform the law among the various jurisdictions.” See also, A. M. Knitwear Corp. v All Am. Export-Import Corp. (41 NY2d 14); Agar v Orda (264 NY 248); Comment to UCC 1-102, McKinney’s Cons Laws of NY, Book 62-1/2, p 5; New York Anns to UCC 1-102, McKinney’s Cons Laws of NY, Book 62-1/2, p 7; McDonnel, Purposive Interpretation of the Uniform Commercial Code: Some Implications for Jurisprudence, 126 U Pa L Rev 795, 824-828.

. The Official Comment to section 1-207 states in pertinent part: "This section provides machinery for the continuation of performance along the lines contemplated by the contract despite a pending dispute, by adopting the mercantile device of going ahead with delivery, acceptance, or payment 'without prejudice’, 'under protest’, 'under reserve’, 'with reservation of all our rights’, and the like. All of these phrases completely reserve all rights within the meaning of this section. The section therefore contemplates that limited as well as general reservations and acceptance by a party may be made 'subject to satisfaction of our purchaser’, 'subject to acceptance by our customers’, or the like.” (As quoted in Official Comment, UCC 1-207, McKinney’s Cons Laws of NY, Book 62-Vz, p 64 [1964].) Hawkland suggests that section 1-207 permits a party to proceed with the "contemplated performance of the original contract” without fear of a waiver. (Hawkland, supra, n 1, at 331.) Rosenthal takes issue with Hawkland and contends that the provision was only intended to apply where one party’s acquiescence in the other’s performance or demand might, "by operation of law”, effectuate a waiver or other prejudicing of his rights. (Rosenthal, supra, n 1, at 63; see also, Corbin, supra, n 1.)

. This comment, together with all the section by section comments prepared by Professors William E. Hogan and Norman Penney, was submitted to the Legislature as part of the Commission’s Report, prepared pursuant to Executive Law § 165, and subsequently has served as part of the "New York Annotations” to the Consolidated Laws of New York. (See, New York Anns, McKinney’s Cons Laws of NY, Book 62-Vz, UCC 1-207, p 65 [1964].)

. The commentators and the courts of other jurisdictions agree that the New York Annotations are quite expansive and do deal with the full payment check situation. (See, e.g., Hawkland, supra, n 1, at 332; Rosenthal, supra, n 1, at 61-62; Flambeau Prods. v Honeywell Information Sys., 116 Wis 2d 95, 341 NW2d 655, 661-662; Chancellor, Inc. v Hamilton Appliance Co., 175 NJ Super 345, 418 A2d 1326, 1328.) Moreover, as noted by Rosenthal, ”[i]n view of the importance of New York’s adoption of the Code to the national decision to do so, as well as the especially intensive study of the Code by that state’s Law Revision Commission before enactment, interpretative clues derived from the New York experience may be of particularly great weight.” (Rosenthal, supra, n 1, at 62; see also, Flambeau Prods. v Honeywell Information Sys., supra, at p 662.)

. With regard to article 3, it is also notable that a proposed subdivision three to section 3-802, specifically giving accord and satisfaction effect to a negotiated full payment check, was ultimately deleted from the Code prior to its adoption. The proposed provision in the May 1949 Official Draft stated: "Where an instrument by its terms provides that it is taken in full satisfaction of an obligation the payee by obtaining payment of the instrument or by negotiating it discharges the obligation unless he establishes that unconscionable advantage has been taken by the obligor, or unless the drawer initiates the collection of the instrument on behalf of the payee.”
*331 In the 1952 Official Draft, it was somewhat modified: "Where a check or similar payment instrument provides that it is in full satisfaction of an obligation the payee discharges the underlying obligation by obtaining payment of the instrument unless he establishes that the original obligor has taken unconscionable advantage in the circumstances.”
The Official Comments explained the intended effect of this codification of the law of accord and satisfaction. In part, it was noted: "Checks are frequently given with a term providing that they are 'in full payment of all claims’, or similar language. The holder who obtains payment of such a check takes its benefits subject to the drawer’s stipulation that he releases the original obligation. Even where the obligation is for an undisputed and liquidated debt there is no unfairness in the tender and acceptance of an accord and satisfaction; and in this respect subsection (3) changes the law in a number of states.”
Ultimately, the provision was dropped in the 1956 Official Draft. Its withdrawal had been recommended by the sponsors, who stated: "Reason: The change consists in the deletion of (3); that subsection had provided that a check reciting full satisfaction of an obligation discharges the obligation, but this provision evoked criticism on the ground that it would work hardship, and was open to abuse. ” (Emphasis added; see generally, discussion in Rosenthal, supra, n 1, at 58-61.)

. If the further purpose stated in Code § 1-102 (2) (c) "to make uniform the law among the various jurisdictions” is to be achieved, the National Conference of Commissioners should give serious thought to a clarifying revision. Until such revision is forthcoming and until or unless it is adopted by the Legislature, the foregoing analysis represents our view of the meaning of Code § 1-207.