AIU INSURANCE COMPANY, a/s/o Proctor & Gamble Far East, Inc., Plaintiff,

v.

MITSUI O.S.K. LINES, LTD., Hatteras Shipholding S.A. and M/V/ Cape Henry, her engines, boilers, tackle, etc., Northwest Airlines, Inc. and Joseph J. Sarcona Trucking Co., Defendants.

No. 94 Civ. 1653 (RLC).

United States District Court, S.D. New York.

July 14, 1995.

Donovan, Parry, Walsh & Repetto, New York City (Matthew S. Schorr, Paul H. Murphy, of counsel), for plaintiff.

Kennedy, Lillis, Schmidt & English, New York City (Matthew T. Loesberg, Charles B. Schmidt, of counsel), for Defendant Northwest Airlines, Inc.

## OPINION

ROBERT L. CARTER, District Judge.

Defendant Northwest Airlines, Inc. ("Northwest") moves to amend its answer to add the affirmative defense of accord and satisfaction against plaintiff AIU Insurance Company ("AIU"). Northwest also seeks summary judgment against plaintiff.

### I.

In January 1993, plaintiff's assured, Proctor & Gamble Far East, Inc. ("PGFE"), bought 116 pallets of polyethylene film from Tredegar Film Products ("Tredegar"). Tredegar contracted with John S. Connor, Inc. ("Connor"), a customs broker and freight forwarder, to arrange for transportation of the film from Tredegar's facility in Richmond, Virginia to PGFE in Kobe, Japan. Connor contracted with Northwest to transport the film from Kennedy Airport, New York to Osaka, Japan.

Northwest took possession of the film and issued two air waybills numbered 012–7139 8401 ("air waybill 8401") and 012–7139 8412 ("air waybill 8412"), each covering 58 pallets. For reasons that are disputed, Northwest only shipped 5 pallets from air waybill 8401 and 36 pallets from air waybill 8412 by air. The remainder of the pallets was eventually returned to Tredegar and then transported to Kobe by ocean.

AIU contends that the film was damaged while in Northwest's possession, and in this lawsuit AIU sues to recover for that damage. On March 29, 1993, Connor filed a claim with Northwest in the amount of $971.44 for damage to the 5 pallets shipped by air under air waybill 8401, (Goenner Aff. 1/3/95 Ex. 2), and on April 28, 1993, Northwest issued a check for $971.44. (Goenner Aff. 1/3/95 Ex. 4.) On

May 12, 1993, however, Connor informed Northwest that it had discovered additional damage to the cargo shipped under both air waybill 8401 and air waybill 8412 and that it would "hold off cashing [the] check until the claim [was] resolved." (Goenner Aff. 1/3/95 Ex. 5.) On June 9, 1993, Connor filed a claim for damage to the 530 rolls of film which were transported by ocean under both air waybills, asserting that the value of the rolls of film was $59,172.60, plus $1,384.83 handling and clearance fee and storage fees of $7,000 monthly. (Goenner Aff. 1/3/95 Ex. 6.) On February 16, 1994, Northwest issued PGFE a check for $1,670.66 for damage to the "air freight shipment" carried under air waybill 8412. The letter accompanying the check stated that the check was intended to be "full settlement of your claim," (Goenner Aff. 1/3/95 Ex. 8), and the back of the check bore a similar message. (Goenner Aff. 1/3/95 Ex. 9.) PGFE endorsed and cashed the check. On March 23, 1994, Connor requested Northwest to reissue the check that Northwest had issued on April 28, 1993 in the amount of $971.44, stating that it had held the check "because there were a number of issues which we understand have now been settled." (Goenner Aff. 1/3/95 Ex. 10.) Northwest accordingly reissued the check on April 18, 1994. (Goenner Aff. 1/3/95 Ex. 11.) The reissued check bore a notation on the back similar to that on the back of the February 16, 1994 check regarding full settlement of the claim, and PGFE cashed that check as well. *Id.*

## II.

■ Leave to amend a pleading should be "freely given," Rule 15(a), F.R.Civ.P., and leave should be denied only where amendment would be futile, where it is sought in bad faith, or where it would prejudice the opposing party. *State Teachers Retirement Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981). Defendant's motion to amend its answer is unopposed, so leave to amend is granted.

## III.

Both Northwest and AIU rely on New York law without briefing the choice of law issue. "[I]n the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to be applied." *Walter E. Heller & Co. v. Video Innovations, Inc.,* 730 F.2d 50, 52 (2d Cir. 1984); *see also Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.,* 933 F.2d 131, 137 (2d Cir.1991) (citations omitted). Since neither party has objected to its use, the court will apply New York law.

## IV.

AIU will be entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Rule 56(c), F.R.Civ.P. Solely for purposes of this motion, the facts will be viewed in the light most favorable to Northwest, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ Northwest asserts that all of PGFE's claims under the two air waybills were discharged through accord and satisfaction when PGFE cashed the checks. Northwest has the burden of proving all the essential elements of this defense. *Alentino, Ltd. v. Chenson Enters., Inc.,* 938 F.2d 26 (2d Cir.1991) (applying New York law). "The process of making an accord, of interpreting the words and acts of the parties, and of determining the legal effect thereof, is the same as in the case of other contracts." 6 Arthur Linton Corbin, Corbin on Contracts § 1277, at 117 (1962). Under the common law doctrine of accord and satisfaction, where a dispute exists over a debt or claim, the creditor's acceptance of partial payment, for example by endorsing a check, will create a new contract which discharges the debt. *Horn Waterproofing Corp. v. Bushwick Iron & Steel Co.,* 66 N.Y.2d 321, 497 N.Y.S.2d 310, 312, 488 N.E.2d 56, 58 (1985).[1] A dispute

---

1. The rule has been modified in New York by U.C.C. § 1-207, which allows a party to assent to performance without prejudicing any rights that

it explicitly reserves. *Horn Waterproofing Corp.,* 497 N.Y.S.2d at 313, 488 N.E.2d at 59. Under § 1-207, a creditor can reserve his rights even

will exist where the amount due is unliquidated. 6 Corbin on Contracts § 1288 at 160. The settlement of the dispute constitutes consideration, and accord and satisfaction occur only where the dispute is honest and not fraudulent. *Horn Waterproofing Corp.*, 497 N.Y.S.2d at 312, 488 N.E.2d at 58. Furthermore, an accord will be created only where both parties intended to enter into it. *Cerulean Land Developers Corp. v. Colon Dev. Corp.*, 144 A.D.2d 615, 535 N.Y.S.2d 35 (1988).

■ At the time that PGFE cashed the checks, the amount, if any, owed by Northwest was unliquidated—PGFE had merely submitted claims, the parties had not settled on an amount due, and Northwest had not been adjudged liable. Therefore, there was a genuine dispute sufficient to form the basis for an accord. 6 Corbin on Contracts § 1288 at 160.

■ AIU claims, however, that PGFE never had the requisite intent to enter into an accord because at the time that PGFE's agent cashed the check for $971.44 the agent believed that the dispute had been settled. AIU asserts further that even if PGFE did enter into an accord, that accord cannot cover the cargo that was shipped by sea because both Northwest and PGFE only intended to settle the claims regarding the cargo shipped by air. As support for these assertions, AIU points to a variety of extrinsic evidence, including a letter written by Jerome Goenner, Northwest's cargo claims manager; copies of the air waybills; and an affidavit submitted by Carroll Forehand, the general manager of PGFE's freight forwarder. AIU also asserts that the question of intent cannot be settled until it has had an opportunity to depose Goenner. "Under New York law, we first look to the written agreement to discern the parties' intent and limit our inquiry to the words of the agreement itself so long as the agreement sets forth the parties' intent clearly and unambiguously." *Nicholas Labs. Ltd. v. Almay, Inc.*, 900 F.2d 19, 20–21 (2d Cir.1990). Where intent is clear from the agreement itself the court may determine it as a matter of law, but where the court must turn to extrinsic evidence to determine the parties' intent then it becomes an issue of fact, *National Am. Corp. v. Federal Republic of Nig.*, 448 F.Supp. 622, 643 (S.D.N.Y.1978) (Goettel, J.), *aff'd*, 597 F.2d 314 (2d Cir.1979), which may preclude summary judgment.

■ Here, Connor endorsed the check for $971.44, on the back of which was written, "By endorsement of this check, the payee acknowledges full settlement and satisfaction of all claims against and/or liability of Northwest Airlines, Inc. . . . arising in connection with air cargo shipment covered by Airbill Number 7139–8401 dated 1–27–93." (Goenner Aff. 1/3/95 Ex. 12.) PGFE's agents also endorsed the check for $1,670.66, the back of which bore identical language regarding Airbill Number 7139–8412 dated 1–25–93. (Goenner Aff. 1/3/95 Ex. 9.) Although this language evinces an intent by both parties to settle some claims, the phrase "air cargo shipment covered by Airbill Number . . ." is too vague to permit the court to determine from the face of the contracts alone which claims the parties intended to settle. In light of the fact that the claims involve damage that allegedly occurred to the cargo during the time that it was stored by Northwest, an air carrier, although some of the cargo was eventually carried by ocean, the phrase could refer either to all of the cargo or solely to the cargo that was carried by air. Since the phrase is ambiguous, the court will turn to extrinsic evidence to ascertain its meaning. *Christiania Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co.*, 979 F.2d 268, 274 (2d Cir.1992).

AIU argues that the air waybills were altered to reflect the fact that only 5 of the pallets listed in air waybill 8401 and only 36 of the pallets listed in air waybill 8412 were carried by air, and that the language on the checks referring to "air cargo shipment covered by Airbill Number 7139–8401 dated 1–27–93" and "air cargo shipment covered by Airbill Number 7139–8412 dated 1–25–93" therefore refers only to the pallets carried by air. (Forehand Aff. ¶¶ 9, 15 & Ex. 1.) AIU tells only part of the story, however. As Goenner explains, a copy of the air waybill

though he has accepted the debtor's check. *Id.* at 314, 488 N.E.2d at 60. However, AIU has not asserted that PGFE explicitly reserved any rights upon cashing the check.

**728**

always accompanies any cargo carried by air, and when cargo is shipped in partial lots, as this was, the copy of the air waybill accompanying the cargo is altered to reflect the partial nature of the shipment. (Goenner Aff. 3/9/95 ¶¶ 6–7.) Therefore, the copies of the air waybills to which PGFE points are those that accompanied the cargo that was carried by air (Forehand Aff.Ex. 1), but there were other copies that accompanied the cargo that was carried by ocean, and those copies were altered to reflect only the cargo carried by ocean. (Goenner Aff. 3/9/95 Ex. 13.) Therefore, *all* the cargo, whether carried by air or by ocean, was covered by air waybills 8401 and 8412, and AIU's argument is not conclusive.

AIU argues that the court cannot determine Northwest's intent in reaching the accord until AIU has had a chance to depose Goenner. It points to a memorandum from Goenner to a fellow Northwest employee, dated February 11, 1994, six days before Northwest issued the check for $1,670.66 which purported to settle all claims regarding air waybill 8412. The memo states,

> HAVE REVIEWED THIS WITH OUR INSURERS. THE INCIDENT CLAIMED AT OSA INVOLVES A SHIPMENT BY AIR AND NOT THE BULK OF THE GOODS WHICH WERE MOVED BY SEA UNDER A DIFFERENT AIRWAYBILL. THEREFORE, WE WILL RESOLVE THIS MATTER WITH PROCTOR AND GAMBLE/JAPAN C/O MR. IZUMIKAWA FOR JPY 186,458 OR $1,670.00 USD....

(Schorr Aff. Ex. 2.) This memo contradicts the following statement in Goenner's affidavit:

> It was clear to me that the claims by John S. Connor, Inc. and Proctor & Gamble Far East, Inc. against Northwest were to include not only the rolls actually carried by air under the air waybills, but for damage that may have occurred to the 530 rolls shipped on the M/V CAPE HENRY, while they were in Northwest's possession.

(Goenner Aff. 1/3/95 ¶ 16.) AIU has thus raised a genuine question of material fact regarding Northwest's intention in issuing the two checks, rendering summary judg-

ment inappropriate, especially in light of the fact that plaintiff has not yet had an opportunity to depose Goenner.

Consequently, in deciding this motion the court need not reach the issue of whether PGFE intended to settle the claims regarding the cargo that was transported by ocean. Furthermore, the court need not determine the import of AIU's assertions that Connor accepted the check for $971.44 under the mistaken impression that the claims regarding the cargo carried by ocean had been settled and that Connor was not authorized to settle the claims regarding the cargo shipped by sea. Finally, although it may be relevant in determining the meaning of the contract terms, the court need not now assess the weight of Northwest's assertion that the industry uses the Warsaw Convention definition of "transportation by air," according to which that term covers "the period during which the baggage or goods are in charge of the carrier, whether in an airport or on board an aircraft...." (Warsaw Convention, Art. 18.)

## V.

In sum, the motion to amend the answer is granted and the motion for summary judgment is denied.

**IT IS SO ORDERED.**