OPINION OF THE COURT
James W. McCarthy, J.
The above-referenced matter is before this court pursuant to respondent Charles Kleingardner’s application to confirm an arbitration award (CPLR 7510). Oral argument was heard by this court on October 2, 2003, and at the request of the court, counsel for the parties were given an additional two weeks to submit memoranda of law. Having reviewed the submissions of the parties, for the reasons set forth below, this court makes the following findings of fact and conclusions of law.
Findings of Fact
The action underlying the instant motion arises from a motor vehicle accident on August 27, 1997. At the time of the accident, respondent Charles Kleingardner was driving a vehicle during the course of his employment by St. Peter’s and Paul’s Russian Orthodox Church. Petitioner, Church Mutual Insurance Company, provided both workers’ compensation and automobile coverage to respondent’s employer. Following the accident, respondent’s counsel settled with the other driver involved for the limits of her policy. Following approval of the settlement by Church Mutual, petitioner and respondent proceeded with an underinsurance arbitration which is the subject of the instant motion.
In August of 2001, petitioner sought a stay of respondent’s demand for arbitration of the underinsurance claim. As part of the stay application, Church Mutual alleged that the court, rather than arbitration, was the proper forum to determine the appropriate amount of offset for workers’ compensation and Social Security benefits which the claimant was receiving. By order dated November 13, 2001, this court declared that Church Mutual was entitled to an offset from any award of economic damages for past and future workers’ compensation and Social Security disability benefits. The court further continued juris *678 diction to review the arbitrator’s determination with respect to the claimed offsets.
Following the issuance of the order and the completion of discovery, on November 19, 2002, the parties appeared before arbitrator Thomas E Bogan, and on March 3, 2003, the arbitrator issued his decision, finding:
“[T]he value of the claimant’s past and future pain and suffering to be $675,000[,] . . . [and the value] of his special damages for economic loss over and above those damages covered by workers’ compensation and social security disability payments to be $75,000. Since he has already received $25,000 from the carrier for the underinsured tortfeasor, he is entitled to $725,000 which I award.”
On March 25, 2003, respondent’s counsel sent Church Mutual’s counsel a “Receipt and Release Under Underinsured Motorist Coverage” releasing petitioner from “any and all liability whatsoever under the Underinsured Motorist Coverage [issued by petitioner].” The letter accompanying the release provided: “We trust that payment will be made within 21 days of the date of this mailing to avoid the imposition of additional costs, disbursements and interest, note; we are not authorized BY OUR CLIENT TO WAIVE THE PROVISIONS OF CPLR 5003A [sic].” In correspondence dated April 1, 2003, petitioner’s counsel acknowledged receipt of the release and stated that his client “has not determined what course of action it will take with respect to the arbitration award[,]” and further questioned respondent’s counsel’s reference to CPLR 5003-a.
On April 16, 2003, respondent’s counsel sent correspondence to Church Mutual in Merrill, Wisconsin. The letter, which is unsigned, provides:
“To date, we have had no response. Pursuant to CPLR 5003a [sic], a judgment may be entered against your insured for the amount of the settlement as well as plaintiffs costs, disbursements and interest . . . Failure to hear from you, or failure to receive the check immediately may result in the entry of judgment against your insured without any further notice or warning.”
By letter dated April 28, 2003, counsel for Church Mutual responded to the April 16, 2003 correspondence outlining his client’s “concerns” with respect to “claims that Church Mutual may have to assert a lien against the recovery either against the *679 underlying tortfeasor or under the arbitration award.” Counsel suggested that he, respondent’s counsel and counsel for the compensation carrier meet to address the remaining issues.
On May 6, 2003, counsel for Church Mutual advised respondent’s counsel that his client had decided not to contest the arbitration award, but that he could not issue a check until he received consent from the compensation carrier. On May 21, 2003, petitioner’s counsel sent Mr. Kleingardner’s attorney a draft in the amount of $725,000 “in full satisfaction of the Arbitration Award.” Counsel further indicated in his correspondence that “it is our position that, under the circumstances, there is no obligation to pay interest with respect to this payment.” Thereafter, respondent negotiated the check, noting above his signature “under protest.”
By notice of motion dated July 21, 2002 (sic), respondent’s counsel moved for an order confirming the March 3, 2003 arbitration award, and for interest on the award from March 3, 2003 (the date of the award) to May 21, 2003 (the date on which payment was tendered). Citing to cases in which a party moved to confirm an arbitration award, respondent argues that it is entitled to interest on the arbitrator’s award from the date of decision. Respondent further alleges that his endorsement and deposit of the proceeds check did not act as an accord and satisfaction, insofar as the check was endorsed with the notation “under protest.” Petitioner does not take issue with the propriety of the underlying arbitration award, arguing in opposition that the endorsement and deposit of the check amounted to an accord and satisfaction barring the instant motion, and, in the alternative, that the award of interest in the instant action is not proper insofar as payment in this matter was tendered as soon as possible under the unique circumstances.
Conclusions of Law
A. Accord and Satisfaction:
In opposition to the instant motion, petitioner first argues that respondent’s acceptance of the $725,000 check constituted an accord and satisfaction, barring Mr. Kleingardner’s claim for interest. It is well settled that
“Accord and satisfaction is an affirmative defense which must be proven by the party asserting the claim (19 NY Jur 2d, Compromise, Accord, and Release, § 26, at 333). For the defense to be estab *680 lished, it must first be shown that there is a disputed unliquidated claim between the parties which they have mutually resolved through a new contract ‘discharging all or part of their obligations under the original contract (6 Corbin, Contracts, § 1276; Restatement, Contracts 2d, § 281)’ (Merrill Lynch Realty/Carll Burr, Inc. v Skinner, 63 NY2d 590, 596)
“Moreover, acceptance of a check will operate as an accord and satisfaction only when the person receiving the check has been clearly informed that acceptance of the amount offered will settle or discharge the claim (Merrill Lynch Realty/Carll Burr, Inc. v Skinner, 63 NY2d 590, 596, supra).” (Conboy, McKay, Bachman & Kendall v Armstrong, 110 AD2d 1042, 1043 [4th Dept 1985]; see also, Merrill Lynch Realty/Carll Burr, Inc. v Skinner, 63 NY2d 590, 596 [1984] [“As a general rule, acceptance of a check in full settlement of a disputed unliquidated claim operates as an accord and satisfaction discharging the claim (Nassoiy v Tomlinson, 148 NY 326; Ann., 34 ALR 1035; 75 ALR 905; Restatement, Contracts 2d, § 281, Comment d). The theory is that the parties have made a new contract discharging all or part of their obligations under the original contract (6 Corbin, Contracts, § 1276; Restatement, Contracts 2d, § 281)”].)
In the instant action it is not disputed that the correspondence accompanying the insurance company’s payment indicated that the check was tendered “in full satisfaction of the Arbitration Award[,]” nor is it disputed that respondent endorsed the check “under protest.” Thus it is the effect of respondent’s restrictive endorsement and the applicability of Uniform Commercial Code § 1-207 that is at the center of this court’s analysis.
Uniform Commercial Code § 1-207 provides: “A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as ‘without prejudice’, ‘under protest’ or the like are sufficient.” (UCC 1-207.) In defining the scope of UCC 1-207, the New York Court of Appeals held, in Horn Waterproofing Corp. v Bushwick Iron & Steel Co. (66 NY2d 321 [1985]):
*681 “[T]he payment of a contract debt by check or other commercial paper and its acceptance by the creditor fall within the reach of section 1-207. Whether the underlying contract between the parties be for the purchase of goods, chattel paper or personal services, the use of a negotiable instrument for the purpose of payment or attempted satisfaction of a contract debt is explicitly and specifically regulated by the provisions of article 3 and, therefore, undeniably a Code-covered transaction. Consequently, a debtor’s tender of a full payment check is an article 3 transaction which is governed by section 1-207, regardless of the nature of the contract underlying the parties’ commercial relationship . . .
“By construing the section to permit a reservation of rights whenever a negotiable instrument is used to make payment on an existing debt, regardless of the nature of the underlying obligation between the parties, the commercial law of negotiable instruments is rendered more simple, clear and uniform. Moreover, the policy embodied in section 1-207, to favor a preservation of rights despite acceptance of partial satisfaction of the underlying obligation, is thus extended to reach all commercial transactions in which the Code is implicated by reason of payment by an article 3 instrument.” (Id. at 330-331.)
In attempting to limit the holding of the Court of Appeals, petitioner’s counsel argues: “Horn Corp. is distinguishable herein because this is not a commercial matter and there was no ‘contract debt’ as of May 21, 2003 when the settlement check was tendered. There was simply an award, which ... is not a judgment.” Citing to Clarke v Yuans (140 Misc 2d 129 [Civ Ct, Queens County 1988]), petitioner’s counsel further argues that “some New York Courts have refused to apply the decision in Horn Corp. to the settlement of tort claims.” While counsel is correct in his assertion that Judge Milano refused to extend the decision in Horn Waterproofing Corp. to the case before the court, the instant action warrants a more thorough analysis of the opinion.
In holding that the decision in Horn Waterproofing Corp. (supra) was inapplicable to the case before the court, Judge Milano wrote:
“But this court at this time is reluctant and not prepared to apply the decisional reasoning of Horn *682 Corp. (supra) to the instant case and chooses to distinguish it for the following reasons. First, no creditor-debtor relationship arises or is created because of an automobile accident. Prior to the occurrence, there was no underlying obligation based on a contract debt between the plaintiff and the defendant. Nor is one created subsequently because the issues of negligence, duty, culpability, proximate causation and damages are yet to be determined and resolved. Secondly, there was no admission of liability on the part of the defendant or his insurance carrier in regard to the damages arising out of said accident which would have created an underlying obligation and thus the offer of settlement accompanied by a check in full satisfaction and settlement of any and all claims thereof was only an offer of settlement under the circumstances and not an attempt to settle an existing debt. It was an offer to be rejected or accepted by the plaintiff.” (Clarke v Yvans, supra at 134-135 [emphasis added].)
In the instant action, the issues of negligence, duty, culpability, proximate cause and damages were determined by an arbitrator after a hearing, a decision that petitioner’s counsel indicated as of May 6, 2003, his client had chosen not to contest. Here, it is clear that the determination of the arbitrator created the legally enforceable obligation found lacking by the court in Clarke, clearly bringing the instant action within the Court of Appeals decision in Horn Waterproofing Corp. (supra).
Nor has this court’s independent research found a case in which the decision in Clarke v Yvans (supra) has been followed. To the contrary, a number of reported decisions and treatises analyzing the scope of UCC 1-207 have, consistent with the Court of Appeals decision in Horn Waterproofing Corp. (supra), brought fact patterns similar to the instant action within the ambit of the statute. (See, e.g., 19A NY Jur 2d, Compromise, Accord, and Release § 11 [“Effect of UCC § 1-207”];[1] 107 NY Jur 2d, Uniform Commercial Code § 52 [“Particular transactions or *683 matters to which reservation of rights applies”]; McKinney’s Forms, UCC 1-207 [“Performance or acceptance under reservation of rights — Case commentary”; Annotation, Application of UCC § 1-207 to Avoid Discharge of Disputed Claim Upon Qualified Acceptance of Check Tendered as Payment in Full, 37 ALR4th 359; Deverna v Kinney Sys., 142 Misc 2d 271 [Civ Ct, NY County 1989], affd 146 Misc 2d 276 [App Term, 1st Dept 1990].)[2]
In light of the foregoing, this court finds that the respondent’s restrictive endorsement served to negate petitioner’s affirmative defense of accord and satisfaction. Insofar as the court has determined that the check was not accepted in full satisfaction of the underlying arbitration award, this court must next turn its attention to the propriety of the respondent’s claim for interest on the arbitration award.
B. Confirmation of the Arbitrator’s Award:
Turning next to the substance of the claim for interest on the arbitration award, it is well settled that “[U]pon confirmation of an arbitrator’s award, interest should be provided from the date of the award.” (Board of Educ. of Cent. School Dist. No. 1 of Towns of Niagara, Wheatfield, Lewiston & Cambria v Niagara-Wheatfield Teachers Assn., 46 NY2d 553, 558 [1979].)[3] Further, a party may move to confirm an arbitration award de *684 spite the fact that payment has been tendered by the respondent (in this case petitioner) (see, e.g., Matter of Riccardi [Travelers Ins. Co.], 102 AD2d 871 [2d Dept 1984]; Matter of Aetna Cas. & Sur. Co. v Mantovani, 240 AD2d 566 [2d Dept 1997]; 23A Carmody-Wait 2d § 141-237). However, interest in such an action is limited to the period of time from the arbitrator’s award to the tender of payment. (See, e.g., Matter of Venables v Painewebber, Inc., 205 AD2d 788 [2d Dept 1994]; Matter of Riccardi [Travelers Ins. Co.], supra; 23A Carmody-Wait 2d § 141:247.)
In the instant action, petitioner does not seek to vacate the arbitration award on any of the bases set forth in Civil Practice Law and Rules § 7511, objecting only to the respondent’s request for interest. Having reviewed the submissions of the parties, while respondent’s counsel’s incorrectly references Civil Practice Law and Rules § 5003-a as the basis upon which interest would be sought, this court does not find that such reference serves as a waiver by respondent of interest on the award. Nor is the court persuaded that an award of interest in the instant action is not appropriate insofar as petitioner tendered payment as soon as practical. As the Appellate Division, First Department, held in Matter of Riccardi (Travelers Ins. Co.) (supra):
“Petitioner’s application to confirm the arbitrator’s award was timely (CPLR 7510) and respondent failed to advance any of the statutory grounds for vacating or modifying the award (CPLR 7511). Therefore, the award must be confirmed (Geneseo Police Benevolent Assn, v Village of Geneseo, 91 AD2d 858, affd 59 NY2d 726), notwithstanding the fact that respondent has already paid the amount awarded.” (Id. at 871-872.)
In light of the foregoing, since petitioner has failed to cross-move to vacate the award of the arbitrator pursuant to Civil Practice Law and Rules § 7511, this court confirms the March 3, 2003 award of the arbitrator together with statutory interest from the date of the award to the May 21, 2003 tender of payment.

. “The policy embodied in this provision, namely the preservation of rights despite acceptance of a partial satisfaction of an underlying obligation, has been given broad application, reaching all commercial transactions in which the Uniform Commercial Code is implicated in derogation of the common-law rule. Furthermore, any transaction in which a check is tendered in purported full payment is covered by this provision of the Uniform Commercial Code, regardless of whether the underlying transaction between the parties was, for example, a contract for the performance of services as opposed *683 to a contract for the sale of goods, because the very check being tendered is itself governed by Article 3 of the Uniform Commercial Code (relating to commercial paper).” (19A NY Jur 2d, Compromise, Accord, and Release § 11, at 28-29 [emphasis added].)

. “As correctly noted in the decision below, defendant’s tender of a check in settlement of plaintiffs property damage claim brought the transaction within the reach of section 1-207 of the Uniform Commercial Code. The Court of Appeals has stated: ‘By construing the section [UCC 1-207] to permit a reservation of rights whenever a negotiable instrument is used to make payment on an existing debt, regardless of the nature of the underlying [transaction] between the parties, the commercial law of negotiable instruments is rendered more simple, clear and uniform’ (Horn Waterproofing Corp. v Bushwick Iron & Steel Co., 66 NY2d 321, 331 [emphasis added]). We additionally note that at page 331 of the Horn opinion, the court cites with approval to Cohen v Ricci (120 Misc 2d 712), a case where, as here, a check was given as payment for property damage to the claimant’s automobile arising out of the defendant’s negligence. This lends further support to the conclusion that Horn is to be read as applying section 1-207 of the Code to all transactions where a claim is settled by check, notwithstanding that the underlying obligation is not one covered under the substantive law of the Uniform Commercial Code.” (146 Misc 2d at 277.)

. For a thorough analysis of the statutory basis upon which the award of interest is based, see, Matter of McEntee (Motor Veh. Acc. Indem. Corp.) (29 *684 AD2d 68 [1st Dept 1967], cited with approval in Board of Educ. of Cent. School Dist. No. 1 of Towns of Niagara, Wheatfield, Lewiston & Cambria v Niagara-Wheatfield Teachers Assn., supra).